RICHARD J. NELSON (State Bar No. 141658)
E-Mail:        *rnelson@sideman.com*
IAN K. BOYD (State Bar No. 191434)
E-Mail:        *iboyd@sideman.com*
ANNA P. CHANG (State Bar No. 301468)
E-Mail:        *achang@sideman.com*
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
San Francisco, California 94111-3711
Telephone:     (415) 392-1960
Facsimile:     (415) 392-0827

Attorneys for Plaintiffs
Cisco Systems, Inc. and Cisco Technology, Inc.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC., a California corporation, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ZAHID "DONNY" HASSAN SHEIKH, an individual; et al., <br><br> Defendants. | Case No. 4:18-cv-07602 YGR <br><br> **SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:** <br><br> **1. TRADEMARK INFRINGEMENT, 15 U.S.C. § 1114;** <br> **2. TRADEMARK COUNTERFEITING, 15 U.S.C. § 1114;** <br> **3. FALSE DESIGNATION OF ORIGIN, 15 U.S.C. § 1125;** <br> **4. CALIFORNIA UNFAIR COMPETITION, CAL. BUS. & PROF. CODE § 17200 et seq.** <br> **5. UNJUST ENRICHMENT** <br><br> **<u>DEMAND FOR JURY TRIAL</u>** |
| ADVANCED DIGITAL SOLUTIONS INTERNATIONAL, INC., a California corporation, <br><br> Third-Party Plaintiff <br><br> v. <br><br> RAHI SYSTEMS, INC., a California corporation, et al., <br><br> Third- Party Defendants. | |

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    Plaintiffs Cisco Systems, Inc. ("CSI") and Cisco Technology, Inc. ("CTI") (together,

2    Cisco" or "Plaintiffs"), hereby complain and allege against Defendants Zahid "Donny" Hassan

3    Sheikh ("Donny"), IT Devices Online, Inc. ("IT Devices"), Advanced Digital Solutions

4    International ("ADSI"), PureFutureTech LLC ("PureFutureTech"), K & F Associates, LLC ("K &

5    F"), Shahid Sheikh ("Shahid"), Kamran Sheikh ("Kamran"), Farhaad Sheikh ("Farhaad"), Imran

6    Husain ("Husain"), and Jessica Little aka Jessica McIntosh personally and dba McIntosh

7    Networks ("Little") (collectively "Defendants") as follows:

8    **I.      INTRODUCTION**

9        1.      This case seeks to hold Defendants accountable for the mass infringement and

10   counterfeiting, and related unfair competition arising from Defendants' sale of counterfeit, non-

11   authentic "Cisco" products.  Defendants are engaged in massive international counterfeiting

12   operations from operations in Fremont, California, and elsewhere, and even a criminal action

13   against IT Device's operation in the United Arab Emirates has not deterred their continued

14   counterfeiting of products in the United States and elsewhere.

15       2.      As set forth in detail below, Cisco has uncovered a significant and willful

16   infringement scheme by Defendants, which involves the purchase and sale of counterfeit and

17   otherwise non-genuine and infringing "Cisco"-branded products, offered to the public as genuine

18   Cisco products.  Customers purchasing such products are duped into thinking that they are in fact

19   buying genuine Cisco-branded products for a cut-rate price, causing significant harm not only to

20   the duped customer, but also to Cisco, its brand, and its established reputation for producing the

21   highest quality networking communications and information technology products and services.

22       3.      Consumers rely on Cisco products to run complex, critical and highly secured

23   networks.  But counterfeit Cisco products can cause privacy and security vulnerabilities, data loss,

24   network downtime, and substantial business interruption.  Cisco brings this action to protect

25   consumers from receiving inferior counterfeit products, to recover for the significant damage

26   Defendants' unlawful and infringing conduct has caused to Cisco, to put a stop to Defendants'

27   unlawful and infringing conduct, and to enjoin further unlawful and infringing conduct.

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

**II.     THE PARTIES**

4.      Plaintiff Cisco Systems, Inc., is, and at all times mentioned herein was, a California corporation, with its principal place of business at 170 W. Tasman Drive, San Jose, California 95134.

5.      Plaintiff Cisco Technology, Inc., is, and at all times mentioned herein was, a California corporation with its principal place of business at 170 W. Tasman Drive, San Jose, California 95134.

6.      On information and belief, Defendant Donny Sheikh is, and for some of the relevant times mentioned herein was, an individual residing at 7199 W. Woodbury Court, Pleasanton, California, 94566 (the "Woodbury Court Address").

7.      On information and belief, Defendant IT Devices Online, Inc., is a California corporation with its principal places of business at 7172 Regional Street, Suite 243, Dublin, California 94568 (the "Regional Street Address") and 44288 Fremont Boulevard, Fremont, California 94538 (the "Fremont Boulevard Address).  On information and belief, Defendant Donny Sheikh owns, operates, and controls IT Devices.

8.      On information and belief, Defendant Advanced Digital Solutions International is a California corporation with its principal places of business at 4255 Business Center Drive, Fremont, California 94538 (the "Business Center Address") and 7172 Regional Street, Dublin, California 94568.

9.      On information and belief, Defendant PureFutureTech LLC is a California limited liability company with its principal places of business at 6172 Corte Padre, Pleasanton, California 94566 and the Business Center Address.

10.     On information and belief, Defendant K & F Associates, LLC, is a California limited liability company with its principal place of business at 9000 Crow Canyon Road, Danville, California 94506 and the Business Center Address.  K & F also does business as tape4backup.com.

11.     On information and belief, Defendant Shahid Sheikh is an individual residing at 1365 Lawrence Road, Danville, California 94506.  On information and belief, Shahid Sheikh

1   owns ADSI with his wife; owns K & F (which is named after his sons, Kamran and Farhaad)

2   though a family trust; and operates and controls ADSI and K & F.  Shahid and Donny are

3   brothers.

4          12.     On information and belief, Defendant Kamran Sheikh is an individual residing at

5   1365 Lawrence Road, Danville, California 94506.  Kamran is Shahid's son and owns, operates,

6   and controls PureFutureTech.

7          13.     On information and belief, Defendant Farhaad Sheikh (also known as "Freddy") is

8   an individual residing at 1365 Lawrence Road, Danville, California 94506.  On information and

9   belief, Farhaad Sheikh is the Chief Executive Officer of Defendant ADSI since at least January

10  2019.  Farhaad is Shahid's son.

11         14.     On information and belief, Defendant Imran Husain is an individual residing in

12  Tracy, California.

13         15.     On information and belief, Jessica Little aka Jessica McIntosh is an individual who

14  resided at 3090 Regent Street, Berkeley, California 94705 (the "Regent Street Address") during

15  the time period mentioned herein.  On information and belief, Jessica Little aka Jessica McIntosh

16  does business personally as McIntosh Networks and is an employee of ADSI, monitoring a UPS

17  Box at 561 Keystone Ave #398, Reno, Nevada 89503 (the "Reno UPS Box") on behalf of ADSI.[1]

18         16.     Cisco is informed and believes, and thereon alleges, that Defendants undertook

19  obligations or rights arising out of the subject events and happenings herein referred to, engaged in

20  actions or omissions, either intentional or negligent, regarding the subject events and happenings

21  herein referred to, and/or benefited unjustly from the efforts, work, and goods of Cisco.

22  **III.    JURISDICTION AND VENUE**

23         17.     This is an action for violations of the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et*

24  *seq.* (the "Lanham Act").  This Court has original subject matter jurisdiction over this action

25  pursuant to the provision of the Lanham Act, 15 U.S.C. § 1121, as well as under 28 U.S.C. §§

26

27  ───────────────────────────

28  [1] ADSI, Shahid, Kamran, and Farhaad will be collectively referred to as the "ADSI Defendants".

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    1331 and 1338(a) and (b).

2        18.    This Court has supplemental subject matter jurisdiction over the pendent state law

3    claims under 28 U.S.C. § 1367, because these claims are so related to Cisco's claims under federal

4    law that they form part of the same case or controversy and derive from a common nucleus of

5    operative facts.

6        19.    This Court has personal jurisdiction over Defendants because they reside in this

7    district, have engaged in business activities in this district, misled consumers in this district,

8    directed business activities at this district, committed the tortious acts complained of herein within

9    this district, and have committed tortious acts with knowledge that the effects of their acts would

10   be felt by Cisco and others in this district.

11       20.    Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b)(2) because

12   Defendants reside in this district, a substantial part of the events or omissions giving rise to

13   Cisco's claims occurred in this judicial district, and a substantial part of the property that is the

14   subject of the action is situated in this district.

15   **IV.    INTRADISTRICT ASSIGNMENT**

16       21.    In accordance with Civil Local Rule 3-2(c), this action is properly assigned on a

17   District-wide basis because it relates to Intellectual Property Rights.

18   **V.    FACTUAL ALLEGATIONS**

19       **A.    Cisco's Business And History**

20       22.    Founded in 1984, Cisco is the worldwide leader in developing, implementing, and

21   providing the technologies behind networking, communications, and information technology

22   products and services.  Cisco develops and provides a broad range of networking products and

23   services that enable seamless communication among individuals, businesses, public institutions,

24   government agencies, and service providers.  Specifically, the thousands of engineers who work at

25   Cisco develop and provide networking and communications hardware, software, and services that

26   utilize cutting-edge technologies to transport data, voice, and video within buildings, across cities

27   and campuses, and around the world.

28       23.    Since its founding, Cisco has pioneered many of the important technologies that

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  created and enabled global interconnectivity.  During the past three decades, Cisco has invested

2  billions of dollars, and the time and dedication of thousands of its engineers, in the research,

3  development, and sale of industry-leading networking and communications products and services.

4  24.    Cisco has also built up tremendous goodwill and brand reputation among

5  consumers, including corporate and government consumers, through significant investment in

6  advertising, promoting, and delivering products, software, and services of the highest quality

7  under the CISCO trademark and the family of CISCO-related trademarks (collectively, the "Cisco

8  Marks").  Cisco has used the Cisco Marks to identify goods and services as being genuine and

9  authorized, and therefore, the Cisco Marks are well-recognized signifiers of Cisco's best-in-class

10  products, software, and services.

11  **B.    Cisco's Trademarks**

12  25.    CTI owns all rights, title, and interest in the Cisco Marks, many of which are

13  included on the Principal Register of the U.S. Patent and Trademark Office ("USPTO"), and it has

14  licensed the use of the Cisco Marks to CSI.  The Cisco Marks are well-known.  They are used in

15  connection with Cisco's networking hardware and software products and services.  They include,

16  but are not limited to, the following marks that are used in interstate commerce:

| Mark | Registration Number | Registration Date |
|---|---|---|
| CISCO | 1,542,339 | June 6, 1989 |
| CISCO SYSTEMS | 1,996,957 | August 27, 1996 |
| CISCO | 2,498,746 | October 16, 2001 |
| ıllıılıı CISCO | 3,759,451 | March 9, 2010 |
| CISCO | 3,978,294 | June 14, 2011 |
| ıllıılıı CISCO | 4,263,591 | December 25, 2012 |

26.    Copies of the above listed registrations are attached hereto as Exhibit A.

27.    The Cisco Marks are distinctive, having no meaning outside of their use by Cisco

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  in its course of business operations and in its advertising to distinguish its products and services.

2  Cisco uses the Cisco Marks to advertise through a wide variety of media including television,

3  radio, newspapers, magazines, billboards, direct mail, and web sites.

4        28.    Cisco has attained one of the highest levels of brand recognition among consumers

5  due to its extensive advertising and promotional efforts and its continuous use of its core Cisco

6  Marks for the past three decades.  As a result of Cisco's longstanding and widespread use and

7  promotion of the Cisco Marks, Cisco customers around the globe have come to rely upon the

8  Cisco Marks to identify Cisco's high-quality hardware, software, and services.  Many of Cisco's

9  products are purchased by the U.S. government, the military, hospitals, and by other industries, in

10  critical and life-essential applications.

11        29.    Cisco's customers associate Cisco's famous and well-known trademarks, including,

12  among others, CISCO and the Cisco logo, exclusively with Cisco and Cisco's products and

13  services. When customers encounter these marks and decide to purchase goods and services

14  identified by these marks, they expect to receive genuine Cisco products that have been produced

15  by Cisco.  Moreover, when customers purchase products that are advertised as "new factory

16  sealed," they reasonably believe that they are purchasing genuine products manufactured or

17  authorized by Cisco that have not been tampered with from the time the product was sealed in its

18  shipping packaging.

19        **C.**    **Counterfeit And Otherwise Materially Different "Cisco" Products**

20        30.    Counterfeit products that bear markings similar to the Cisco Marks provide

21  customers with a false assurance that the products they have purchased (1) are reliable and

22  conform with Cisco's high standards, (2) come with applicable warranties, (3) can be placed under

23  a Cisco service support contract (i.e., SMARTnet), and (4) come with all of the necessary

24  accessories sold with the product that have been selected and approved by Cisco for use with the

25  product.

26        31.    In addition to harm to customers, the sale of counterfeit Cisco products harms

27  Cisco in many ways.  Counterfeit Cisco products which fail or degrade create the false impression

28  that Cisco products are unreliable, thereby improperly tarnishing Cisco's reputation and causing

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ᴺᴰ FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

Cisco to lose control of its goodwill and suffer lost sales and future business opportunities. When customers purchase Cisco-branded parts that are counterfeit and unreliable, their image of Cisco is diminished and Cisco's opportunity to sell genuine, high-quality products to those customers may be lost forever. As a result of the manufacture and distribution of such counterfeit products, Cisco suffers substantial and irreparable harm to its brand, image, business, and goodwill with the public. Cisco also suffers lost sales when customers purchase counterfeit products instead of genuine Cisco products.

### D. Impact on Health, Safety, and National Security Caused By Counterfeit Cisco Products

32. Cisco products are part of the backbone of the United States information network. Many of Cisco's products are purchased by U.S. governmental entities, the military, hospitals, and by other industries, and used in important and life-essential applications. Critical governmental and other infrastructure is built on, and relies upon, Cisco products to maintain the security of data storage and transfer.

33. The importance of critical functions being able to rely upon the quality of Cisco products cannot be overstated. Cisco firewalls, for example, ensure the integrity of government, medical, and business data and communications. Many critical government functions rely upon the performance of high-quality Cisco products, as compared to the dangers posed by lower quality counterfeits. For example, in a criminal trial involving counterfeit Cisco products sold to the U.S. Marines, a Marine (Staff Sargent Lee Chieffalo) testified that he specifically demanded genuine Cisco products when he ordered them, because if the networks that the "Cisco" products were in failed due to substandard counterfeit products, "Marines could die."

### E. Defendants' Importation and Sale of Counterfeit "CISCO" Products

34. On information and belief, Defendants operate, through a network of related companies, a complex scheme, without the consent of Cisco, to import, distribute, transport, sell, or assist in or cause the sale, importation, distribution, or transportation in interstate commerce of products bearing unauthorized reproductions, copies, counterfeits, and colorable imitations of the Cisco Marks (the "Infringing Products").

35.     U.S. Customs and Border Patrol has seized a number of counterfeit Cisco products imported by Defendants, including those shown below:

| Seizure Notice # | Date of Import | Description | Importer | Exporter |
|---|---|---|---|---|
| 2013-2791-000599 | 5/30/2013 | Cisco Network Switches 10pcs (2 boxes) | IT Devices Online, 44288 Fremont Blvd, Fremont, CA 94538 | Zll Bejing [sic] Decenet Technology 2rd [sic], Industrial District Hou Rui, Hong Kong |
| 2014-2795-100-007-01 | 10/10/2013 | Network Modules, 2 each (1 box) | IT Devices, 44288 Fremont Blvd, Fremont, CA 94538 | Beijing Decenet Technology Co., Ltd., RM A616 Zhongding Building No 18, Beijing, China |
| 2016-2895-100-032-01 | 3/31/2016 | Approximately 222 Cisco Transceivers | Uddin Networks, LLC, 3984 Washington Blvd #315, Fremont, CA 94538 | FD Dispenser Co. Ltd., Fl 2nd 9 East Road, 2Cun Tou Hu Men T, T, DG, GD, China |
| 2016-2895-100-037-01 | 5/3/2016 | Approximately 100 Cisco Transceivers | Uddin Networks, LLC, 3984 Washington Blvd #315, Fremont, CA 94538 | FD Dispenser Co. Ltd., Fl 2nd 9 East Road, 2Cun Tou Hu Men T, T, DG, GD, China |
| 2016-2895-100-041-01 | 5/3/2016 | Approximately 100 Cisco Transceivers | Uddin Networks, LLC, 3984 Washington Blvd #315, Fremont, CA 94538 | FD Dispenser Co. Ltd., Fl 2nd 9 East Road, 2Cun Tou Hu Men T, T, DG, GD, China |
| 2016-2895-100-043-01 | 5/4/2016 | Approximately 100 Cisco Transceivers | Uddin Networks, LLC, 3984 Washington Blvd #315, Fremont, CA 94538 | FD Dispenser Co. Ltd., Fl 2nd 9 East Road, 2Cun Tou Hu Men T, T, DG, GD, China |
| 2016-2895-100-040-01 | 5/4/2016 | Approximately 100 Cisco Transceivers | Uddin Networks, LLC, 3984 Washington Blvd #315, Fremont, CA 94538 | FD Dispenser Co. Ltd., Fl 2nd 9 East Road, 2Cun Tou Hu Men T, T, DG, GD, China |
| 2016-2895-100-039-01 | 5/4/2016 | Approximately 100 Cisco Transceivers | Uddin Networks, LLC, 3984 Washington Blvd #315, Fremont, CA 94538 | FD Dispenser Co. Ltd., Fl 2nd 9 East Road, 2Cun Tou Hu Men T, T, DG, GD, China |

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

| Seizure Notice # | Date of Import | Description | Importer | Exporter |
|---|---|---|---|---|
| 2016-2895-100-046-01 | 5/4/2016 | Approximately 64 Cisco Transceivers | McIntosh Networks, 3090 Regent Street, Berkeley, CA 94705 | FD Dispenser Co. Ltd., Fl 2nd 9 East Road, 2Cun Tou Hu Men T, T, DG, GD, China |
| 2016-2895-100-035-01 | 5/5/2016 | Approximately 103 Cisco Transceivers | Uddin Networks, LLC, 3984 Washington Blvd #315, Fremont, CA 94538 | FD Dispenser Co. Ltd., Fl 2nd 9 East Road, 2Cun Tou Hu Men T, T, DG, GD, China |
| 2016-2895-100-042-01 | 5/5/2016 | Approximately 100 Cisco Transceivers | Uddin Networks, LLC, 3984 Washington Blvd #315, Fremont, CA 94538 | FD Dispenser Co. Ltd., Fl 2nd 9 East Road, 2Cun Tou Hu Men T, T, DG, GD, China |
| 2016-2791-000-472-01 | 5/12/2016 | 2 pc Cisco Network Switches (2 bx) | Uddin Networks LLC, 3984 Washington Blvd, Fremont, CA 94538 | Susan Sun, 2-12 FA, Yuen Street, Mongkok, Hong Kong |
| 2017-2895-100-066-01 | 6/6/2017 | 9 Cisco SFPS, PN: GLC-SX-MM-RGD | McIntesh [sic] Networks, 561 Keystone Ave #398, Reno, NV 89503 | Dongguan Na Cheng/3 II He Tan Gang Rd, Bei Zha, Cun Hu Dongguan, China 523925 |
| 2017-3195-000-275-01 | 9/2/2017 | 54 Transceiver Sets and 11 Labels | McIntosh Networks, 561 Keystone Ave #398, Reno, NV 89503 | FD Dispenser Co., Ltd, Fl-2, No 9, East Road 2, Cun Tou, Hu Men Town, DG, GD 523928 China |
| 2018-2791-000-112-01 | 12/2/2017 | 7 Transceiver Modules | McIntosh Networks, 561 Keystone Ave # 398, Reno, NV 89503 | Shenzen Jelly Int'l Co Ltd, Flat 1 No. 3 Bldg, Fuzhong Ind, Hong Kong, China |
| 2018-2791-000-176-01 | 2/9/2018 | Transceivers | McIntosh Networks, 561 Keystone Ave # 398, Reno, NV 89503 | Black Cat Trading (aka SZ Yifu Co Ltd.), Black Cat Trading (aka SZ Yifu Co Ltd.) |
| 2018-2791-000207-01 | 3/10/2018 | Switches | McIntosh Networks, 561 Keystone Ave # 398, Reno, NV 89503 | Dora.HE, 300 Fung Kat Hueng, Fanling, China |

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

| Seizure Notice # | Date of Import | Description | Importer | Exporter |
|---|---|---|---|---|
| 2018-4197-102-176-01 | 3/14/2018 | 21 Electronic Parts | IT Devices Online, 44288 Fremont Blvd., Fremont, CA 94538 | Digital Device Technology, M3 Bldg C, 55 Abu Dhabi City, UAE |
| 2018-2791-000-238-01 | 3/24/2018 | Transceivers | McIntosh Networks, 561 Keystone Ave # 398, Reno, NV 89503 | SZ Yifu Co Ltd. (aka Black Cat Trading), Flat 1, No.3, Bldg Fuzhong Ind., Hong Kong |
| 2018-2791-000-331-01 | 5/8/2018 | 150 Transceiver Modules | Jessica McIntosh, 561 Keystone Ave, Reno, NV 89503 | SZ Jelly Inter Trade Co, Flat 1, No.3 Bldg, Fuzhong Ind, Hong Kong, China |
| 2018-2791-000-353-01 | 6/7/2018 | Transceivers Labels 650 ea (1 box) | Purefuture Tech 561 Keystone Ave, Reno, NV 89503 | Cwedd Trade Industry Co Ltd, Building A17, Fyong St., Shenzhen City, Hong Kong |
| 2018-2791-000-429-01 | 6/10/2018 | AC Power Supplies (12 each) | Purefuture Tech 561 Keystone Ave, Reno, NV 89503 | Eva He, 103 Block B, Sheung Shui, Sheung Shui, Hong Kong |
| 2018-2791-000-525-01 | 7/8/2018 | 3 Catalyst Switches | Purefuture Tech, 561 Keystone Ave, Reno, NV 89503 | Lesley, Hu, 103 Block C, Sheung Shui Plaza, Fanling, Hong Kong |
| 2018-2791-000-551-01 | 7/8/2018 | 3 Catalyst Switches | Purefuture Tech 561 Keystone Ave. Suite #311 Reno, NV 89503 | Lesley Hu, 103 Block B, Sheung Shui Plaza, Po Wan Road, Fanling Hong Kong |
| 2018-2791-000-533-01 | 7/12/2018 | 3 Catalyst Switches | Purefuture Tech 561 Keystone Ave, Reno, NV 89503 | Lesley, Hu, 105 Block C, Sheung Shui Plaza, Po Wan Road, Hong Kong |
| 2018-2791-000-546-01 | 7/24/2018 | 2 ea. (1 Box) Catalyst Switches | Iman [sic] Husain 47000 Warm Spring Blvd., #122, Fremont, CA 94539 | Joyce, Flat C, 7/F, Kam Wah Building, 10-16 Tung Lok Street, Yuen Long, Hong Kong |
| 2019-2791-000-045-01 | 8/4/2018 | 4 ea. Cisco Catalyst Switch | Pure Future Technology 47000 Warm Spring Blvd. #122 Larkspur, CA 94939 | Beyond Technology Development Co., No. 5025 Huihuangguoji, Beijing, China |

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

| Seizure Notice # | Date of Import | Description | Importer | Exporter |
|---|---|---|---|---|
| 2019-2791-000-018-01 | 8/5/2018 | 3 Catalyst Switches | Purefuture Tech 561 Keystone Ave, Reno, NV 89503 | Beyond Technology Development Co., No. 5025 Huihuangguoji, Beijing, China |
| 2018-4197-001-042-01 | 8/31/2018 | 2 Counterfeit Cisco Switches | Imran Husain 47000 Warm Springs Blvd., Fremont, CA 94539 | Kelly Stewart, 10-16 Tung Lok Street, Yuen Long, Hong Kong |
| 2018-2791-000-568-01 | 9/25/2018 | 6 ea (2 boxes) Catalyst Switches | Imran Hussain [sic] 47000 Warm Springs Blvd., Suite #122, Fremont, CA 94539 | ODSI, 11 Hammonds Way, Stourbridge DY8 4UP Great Britain |
| 2019-4197-000-144-01 | 10/12/2018 | 2 Counterfeit Cisco Switches | Imran Husain 47000 Warm Springs Blvd., #122, Fremont, CA 94539 | Mr. Smith, Flat A 4/F, Yuen Long, China |
| 2019-2791-000-028-01 | 10/23/2018 | 8 ea. (3 boxes) Cisco Network Equipment | Imran Hussain [sic] 47000 Warm Springs Blvd., Suite #122, Fremont, CA 94539 | ODSI, 11 Hammonds Way, West Midlands, Stourbridge DY8 4UP, United Kingdom |
| 2019-3195-000-078-01 | 10/29/2018 | 5 Cisco Network Switches | ADSII 1819 SW 5th Ave, Suite #302, Portland, OR 97201 | Rainbow Beijing Technology Co. Ltd., No. 12 Liangbai Road, Mapo Section, Beijing, China |
| 2019-4197-000-409-01 | 11/6/2018 | 2 Counterfeit Cisco Switches | Imran Husain 47000 Warm Spring Blvd., Ste. 122, Fremont, CA 94539 | Mr. Hasan, Flat B 2/F, Yuen Long, Hong Kong |

### 1.     IT Devices

36.     IT Devices is owned and operated by Donny Sheikh.  On information and belief, IT Devices' offices were located at the Regional Street Address and the Fremont Boulevard Address during the relevant times mentioned herein.  IT Devices is not affiliated with Cisco nor did Cisco authorize it to sell products using the Cisco Marks.  On information and belief, IT Devices nevertheless imports and sells counterfeit Cisco products in the United States, including through

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    its website itdevicesonline.com.

2          37.    On May 30, 2013, U.S. Customs and Border Patrol ("CBP") seized 10 counterfeit

3    Cisco switches at the Port of Los Angeles in California.  IT Devices was listed as the importer of

4    record.  Cisco sent a cease-and-desist letter to IT Devices but did not receive a response.

5          38.    On October 10, 2013, CBP seized 2 counterfeit Cisco network modules at the Port

6    of Ontario in California.  IT Devices was listed as the importer of record.  Cisco sent IT Devices

7    another cease-and-desist letter.  Donny, through his attorney, replied and claimed not to have any

8    knowledge that the products were counterfeit.  Donny stated that he would cease purchasing from

9    all Hong Kong and China-based sellers.

10          39.    In June 2015, Cisco arranged for a test purchase of a Cisco switch from IT Devices.

11   The product was shipped into Berkeley, which is located in this District.  Cisco analyzed the

12   product and determined that the product was counterfeit.

13          40.    On March 14, 2018, CBP seized 21 counterfeit Cisco electronic parts imported by

14   IT Devices to the Fremont Boulevard Address.  The exporting company was Digital Device

15   Technology in the United Arab Emirates, which on information and belief is also owned, operated,

16   and controlled by Sheikh.

17                 **2.    ADSI**

18          41.    ADSI is owned by Shahid and his wife, Roya Sadghiani.  However, Ms. Sadghiani

19   has minimal involvement with ADSI's business and Shahid, during the relevant times mentioned

20   herein, operated and controlled all of ADSI's day-to-day operations, assisted by his sons, Kamran

21   and Farhaad.  Specifically, on information and belief, Shahid directly oversees and manages

22   purchases and sales of Cisco products, including purchases of counterfeit Cisco products from

23   suppliers in China and sales of those products to customers, including the U.S. government;

24   Kamran assists with importing counterfeit products, including setting up various UPS boxes in

25   different states for use in circumventing CBP seizures; and Farhaad oversees selling counterfeit

26   products purchased from China to the government through ADSI's GSA contract.

27          42.    On information and belief, ADSI's offices are located at the Business Center

28   Address and the Regional Street Address (the same addresses as IT Devices' office).

43.     ADSI became a Cisco Partner in September 2011.  In 2015, Cisco discovered that ADSI had purchased Cisco products from an unauthorized broker, violating ADSI's partnership agreement with Cisco.  Cisco attempted to resolve the matter and requested ADSI sign a letter of understanding reaffirming its obligations as a Cisco Partner.  ADSI never returned the letter of understanding and, after Cisco discovered further evidence of misconduct, Cisco terminated ADSI as a Cisco Partner in May 2015.

44.     Cisco also reviewed the personnel registered to ADSI's Cisco account.  Nabia Uddin (an ADSI sales representative) had a Cisco username on the ADSI account as did a "dsheikh" with the email address donny@adsii.com.  On information and belief, the "dsheikh" username was used by Donny to access Cisco's systems to further Defendants' counterfeiting activities.

45.     After May 2015, ADSI has not been affiliated with Cisco or authorized by Cisco to sell products using the Cisco Marks.  On information and belief, ADSI nevertheless imported and sold, and continues to import and sell, counterfeit Cisco products bearing unauthorized uses of Cisco Marks in the United States, including through its website adsii.com, under Shahid, Kamran, and Farhaad's direction and/or with their knowledge or approval.

46.     In 2016, CBP had seized nearly a thousand counterfeit Cisco products imported by Uddin Networks to UPS Box #315 at 3984 Washington Boulevard in Fremont, California (the "Washington Boulevard UPS Box") from a Chinese company called FD Dispenser.

47.     On information and belief, these counterfeit Cisco products were imported at the ADSI Defendants' direction and/or with the ADSI Defendants' knowledge or approval.  On information and belief, Shahid managed purchases of counterfeit Cisco products and tracked shipments of counterfeit Cisco products as they were received at the Washington Boulevard UPS Box and managed pickups of the products by Kamran, Husain, and Ms. Uddin.

48.     On August 11, 2016, counsel for Cisco sent a cease-and-desist letter to Uddin Networks but received no response.

49.     In December 2017, Nabia Uddin, who at that time no longer worked for ADSI, reported to Cisco that ADSI purchases unlabeled products from a company in China and imports

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

the products into a UPS Box in Reno, Nevada.  The UPS Box is associated with McIntosh Networks, which is run by Jessica Little, a (now former) ADSI employee.  (On information and belief, this UPS Box is the Reno UPS Box.)  Little then transported the unlabeled modules to ADSI's office in Fremont.  Once ADSI receives the unlabeled products, Husain affixes labels bearing counterfeit Cisco Marks on the products, and ADSI sells the counterfeit Cisco products to state and federal government entities through GSA contracts.

50.     On October 29, 2018, CBP seized a shipment of counterfeit Cisco products ADSI attempted to import to UPS Box 302 at 1819 SW 5th Avenue in Portland, Oregon (the "Portland UPS Box").

51.     The Portland UPS Box had been registered in July 2018 by Theresa Lau, a (now former) ADSI employee on behalf of PureFutureTech.  On information and belief, the ADSI Defendants instructed Lau to register this UPS Box to assist the ADSI Defendants in their scheme to import counterfeit Cisco products.  Ms. Lau paid for the Portland UPS Box using Kamran's credit card, on information and belief, with the ADSI Defendants' knowledge and consent.

52.     The ADSI Defendants have no offices, employees, or major customers in Portland, Oregon and no personal connections to Portland, Oregon.  On information and belief, the Portland UPS Box was created solely in an effort by the ADSI Defendants to avoid CBP seizures of counterfeit products.

### 3.     Jessica Little

53.     On information and belief, Little is a former employee of ADSI who knowingly assisted the ADSI Defendants with their counterfeiting activities by importing counterfeit Cisco goods as "McIntosh Networks."

54.     In April 2016, while employed by ADSI, Little registered for the Reno UPS Box using the company name McIntosh Networks, a K & F tape4backup.com email address, and the Business Center Address:

55.     Little also submitted an Application for Delivery of Mail Through Agent form to personally use the Reno UPS Box, listing her home address as the Regent Street Address.



56.     On information and belief, the ADSI Defendants instructed Little to register this UPS Box to assist the ADSI Defendants in their scheme to import counterfeit Cisco products.  On information and belief, Little paid for the Reno UPS Box using Kamran's credit card.

57.     The ADSI Defendants have no offices, employees, or major customers in Reno,

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

**1** Nevada and no personal connections to Reno, Nevada.  On information and belief, the Reno UPS

**2** Box was created solely in an effort by the ADSI Defendants to avoid CBP seizures of counterfeit

**3** products.

**4** 58.     On May 4, 2016, CBP seized 64 counterfeit Cisco transceivers imported by

**5** McIntosh Networks from FD Dispenser (the same company used to export counterfeit Cisco

**6** products for Uddin Networks and ADSI).  The address listed for McIntosh Networks was the

**7** Regent Street Address, the same address as Little's residence.  On information and belief, these

**8** counterfeit Cisco products were imported at the ADSI Defendants' direction and/or with the ADSI

**9** Defendants' knowledge or approval.

**10** 59.     On August 11, 2016, counsel for Cisco sent a cease-and-desist letter to McIntosh

**11** Networks.  On August 18, 2016, counsel for Cisco received a response from Little, claiming that

**12** she did not know the company McIntosh Networks and that she did not receive anything from any

**13** Chinese vendor at the Regent Street Address.  Little's claim about not knowing "McIntosh

**14** Networks" was false, since only four months earlier she had opened up the Reno UPS using her

**15** name and the company name of "McIntosh Networks."

**16** 60.     In the second half of 2017, CBP seized a total of 70 counterfeit Cisco transceivers

**17** imported by McIntosh Networks to the Reno Box.

**18** 61.     On May 8, 2018, CBP seized 150 counterfeit Cisco transceivers being imported by

**19** Jessica McIntosh to the Reno UPS Box.

**20** **4.     Imran Husain**

**21** 62.     On information and belief, Husain is an employee of ADSI who knowingly assists

**22** the ADSI Defendants with their counterfeiting activities by importing counterfeit Cisco goods.

**23** 63.     On information and belief, Husain receives generic products at the ADSI

**24** warehouse and prints and/or applies counterfeit Cisco labels to the generic products.  ADSI then

**25** sells the products as genuine Cisco products.

**26** 64.     Husain also assists the ADSI Defendants in importing counterfeit Cisco products.

**27** 65.     Husain assisted Nabia Uddin in setting up the Washington Boulevard UPS Box

**28** and, on information and belief, was approved to pick up packages for Uddin Networks from the

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  Washington Boulevard UPS Box.

2      66.     In September 2017, Husain registered UPS Box 122 at 47000 Warm Springs

3  Boulevard in Fremont, California (the "Warm Springs UPS Box"), using his @adsii.com email

4  address.  Kamran and PureFutureTech both submitted an Application for Delivery of Mail

5  Through Agent form to use the Warm Springs UPS Box.  The ADSI Defendants, and Husain

6  personally, used the Warm Springs UPS Box to import counterfeit Cisco products.

7      67.     In the second half of 2018, CBP seized a number of counterfeit Cisco products that

8  Husain imported to the Warm Springs UPS Box.  On information and belief, these counterfeit

9  Cisco products were imported at the ADSI Defendants' direction and/or with the ADSI

10  Defendants' knowledge or approval.

11             **5.      PureFutureTech and K & F**

12      68.     On information and belief, the ADSI Defendants use PureFutureTech and K & F to

13  help perpetrate their counterfeiting scheme.

14      69.     PureFutureTech and K & F's addresses are both listed as the Business Center

15  Address, which is the same address as ADSI's address.  On information and belief,

16  PureFutureTech and K & F have no employees and are solely operated by Shahid, Kamran, and

17  Farhaad.

18      70.     On information and belief, PureFutureTech purchases counterfeit Cisco products

19  from sources in China and Hong Kong.  PureFutureTech then invoices customers for those same

20  products and bills K & F or ADSI for the same products, including a "service fee".

21      71.     ADSI also billed K & F (doing business as tape4backup.com) for a variety of Cisco

22  products purchased from Chinese suppliers.  Invoices between ADSI and K & F list Shahid as the

23  salesperson for those transactions.

24      72.     Between June and August 2018, CBP seized a number of counterfeit Cisco

25  products PureFutureTech imported to Reno, Nevada, and the same UPS store where the Reno UPS

26  Box is located, and the Warm Springs UPS Box.  On information and belief, these counterfeit

27  Cisco products were imported at the ADSI Defendants' direction and/or with the ADSI

28  Defendants' knowledge or approval.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

**FIRST CLAIM FOR RELIEF**
**Federal Trademark Infringement**
**(15 U.S.C. § 1114)**
**Against All Defendants**

73.     Cisco incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

74.     The Cisco Marks and the goodwill of the business associated with them are tremendously valuable in the United States and worldwide because they are distinctive and universally associated in the public perception with the highest quality network and communications technology products and services.

75.     Defendants have sold, offered to sell, distributed, and advertised infringing products bearing Cisco Marks.

76.     The differences between Defendants' Infringing Products and genuine Cisco goods are material.  Cisco asserts on information and belief that having all original Cisco components and entitlement to warranty services are relevant to customers' decisions about whether, and from whom, to purchase Cisco products.

77.     Defendants' actions have caused confusion, mistake, and deception as to the origin and quality of Defendants' Infringing Products because they are intentionally calculated to mislead the general purchasing public into believing that Defendants' Infringing Products originated from, are associated with, or are otherwise authorized by Cisco, when in fact they are not.

78.     Upon information and belief, Defendants' infringing actions were committed fraudulently, willfully, and in bad faith, with knowledge of Cisco's exclusive rights to, and goodwill in, the Cisco Marks, or with willful blindness to the same, and with the intent to cause confusion, to cause mistake, and/or to deceive.

79.     Defendants' unauthorized use of the Cisco Marks constitutes trademark infringement of the federally registered Cisco Marks and has caused substantial damage to Cisco and to the reputation and goodwill symbolized by the Cisco Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, in an amount to be proven at trial.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

80.     Defendants' conduct described above, including the unauthorized use of the Cisco Marks in interstate commerce, has directly and proximately caused substantial, irreparable injury to Cisco and to the business and goodwill represented by the Cisco Marks, which leaves Cisco without an adequate remedy at law.

**SECOND CLAIM FOR RELIEF**
**Federal Trademark Counterfeiting**
**(15 U.S.C. § 1114)**
**Against All Defendants**

81.     Cisco incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

82.     The Cisco Marks are valid, protectable trademarks that have been registered as marks on the principal register in the United States Patent and Trademark Office.  Cisco is the owner and registrant of the Cisco Marks.

83.     As described in more detail above, Defendants have used and counterfeited the Cisco Marks in connection with the marketing, promotion, and sale of their goods and services without Cisco's consent, in a manner that is likely to cause, and has actually caused, confusion and/or mistake, or that has deceived members of the consuming public and/or the trade.  Indeed, Defendants' counterfeiting and infringing activities are likely to cause and are actually causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin, sponsorship, and quality of Defendants' infringing products, counterfeit packaging, inferior warranty, and other related commercial activities.  As of the filing of this Complaint, Defendants are continuing to infringe the Cisco Marks unabated as alleged further above.

84.     Defendants have publicly advertised, sold, offered to sell, and distributed counterfeit Cisco products in interstate commerce in direct competition with Cisco and without authorization or consent to use the Cisco Marks but with full knowledge of Cisco's notorious prior rights in those marks.

85.     Defendants' counterfeit Cisco products reproduce, counterfeit, copy, and colorably imitate the Cisco Marks or display a spurious designation that is identical with, or substantially

19

1  indistinguishable from, the Cisco Marks.  Defendants have applied their reproductions,

2  counterfeits, copies, and colorable imitations of the Cisco Marks to labels, prints, and packages

3  intended to be used in commerce upon or in connection with the sale, offering for sale,

4  distribution, or advertising of Defendants' counterfeit products, which is likely to cause confusion,

5  to cause mistake, or to deceive.

6      86.    Defendants' unauthorized use of the Cisco Marks on or in connection with

7  Defendants' counterfeit products was conducted intentionally and with notice and full knowledge

8  that the use was unauthorized by Cisco.  Accordingly, Defendants' actions constitute willful

9  trademark infringement and counterfeiting of the Cisco Marks in violation of 15 U.S.C. §§ 1114

10  and 1117.

11     87.    Cisco has been, and continues to be, damaged by Defendants' infringement,

12  including by suffering irreparable harm through the diminution of trust and goodwill among Cisco

13  consumers and members of the general consuming public and the trade.  Cisco is entitled to an

14  injunction against Defendants, and an order of destruction of all infringing products, as well as all

15  monetary relief and other remedies available under the Lanham Act, including but not limited to

16  trebled damages and/or actual profits, reasonable attorney's fees, costs and prejudgment interest,

17  and/or statutory damages.

18                    **THIRD CLAIM FOR RELIEF**
                     **False Designation of Origin**
19                       **(15 U.S.C. § 1125)**
                      **Against All Defendants**
20

21     88.    Cisco incorporates by reference each of the allegations in the preceding paragraphs

22  of this Complaint as though fully set forth here.

23     89.    Defendants resell the Infringing Products that are designed to appear identical to

24  genuine Cisco products and thereby employ the same nature, style, look, and color as genuine

25  Cisco products.  Moreover, as alleged above, Defendants sold products that had affixed counterfeit

26  or infringing versions or reproductions of the Cisco Marks to unauthorized products and/or to the

27  packaging, wrapping, etc., in which the Infringing Products are packaged.  This unauthorized use

28  of the Cisco Marks was likely to cause confusion, to deceive, and to mislead the consuming public

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  into believing that there was some affiliation, connection, or association between Defendants and

2  Cisco and was likely to cause confusion, mistake, or deception as to the origin, source,

3  sponsorship, authorization, approval, or affiliation of Defendants' Infringing Products.

4     90.    Defendants' actions, including the unauthorized use of the Cisco Marks in

5  commerce, constitute false designation of origin, false or misleading descriptions of fact, and false

6  or misleading representations of fact, which have caused confusion, mistake, and deception, as to

7  Defendants' association or affiliation with Cisco, as well as to the origin, source, and sponsorship

8  of Defendants' Infringing Products, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §

9  1125(a).

10    91.    Defendants' unauthorized and misleading use of the Cisco Marks constitutes

11 willful infringement of the Cisco Marks in violation of 15 U.S.C. § 1114(1)(b) and entitling Cisco

12 to treble damages and/or enhanced statutory damages under 15 U.S.C. §§ 1117(b) and (c).

13    92.    Defendants' conduct has directly and proximately caused Cisco to suffer damage in

14 an amount to be proven at trial.

15    93.    Defendants' actions described above, including its unauthorized and misleading use

16 of the Cisco Marks in commerce have caused substantial and irreparable injury to Cisco and to the

17 business and goodwill represented by the Cisco Marks, thereby leaving Cisco without an adequate

18 remedy at law.

19
20
21

**FOURTH CLAIM FOR RELIEF**
**California Unfair Competition**
**(Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**
**Against All Defendants**

22    94.    Cisco incorporates by reference each of the allegations in the preceding paragraphs

23 of this Complaint as though fully set forth here.

24    95.    California Business and Professions Code §§ 17200 *et seq.* prohibits acts of unfair

25 competition, which includes any unlawful business act or practice.

26    96.    Defendants have knowingly, willfully, and unlawfully infringed the Cisco Marks,

27 including through the sale of infringing Cisco networking hardware products in violation of the

28 Lanham Act, 15 U.S.C. § 1114.

97.     As a direct, proximate, and foreseeable result of Defendants' sale of infringing Cisco networking hardware parts, Cisco has further been deprived of lost revenue and payments, and has therefore sustained injury in fact.

98.     Defendants' practices were unlawful, and constitute unfair competition as defined by Cal. Bus. & Prof. C. §§ 17200 *et seq.*  Defendants' misconduct was unlawful because, as described herein, their misconduct constitutes violations of numerous state and federal statutes, including but not limited to Cal. Civ. Code § 1797.81, conversion, state false advertising laws such as Cal. Bus. Prof. Code § 17500, as well as the Lanham Act, 15 U.S.C. §§ 1114 and 1125, and the Federal Trade Commission Act, 15 U.S.C. § 45.  Further, their alleged conduct was unfair in that Defendants' actions, as described herein, significantly threatened and/or harmed competition through infringement, counterfeiting, and false advertising.

99.     As a direct and proximate result of Defendants' unlawful and unfair business practices, Cisco has lost money and property, and has suffered irreparable injury to its brand, business reputation, and goodwill.  As such, Cisco's remedy at law is not adequate to compensate for the injuries inflicted by Defendants.  Accordingly, Cisco is entitled to temporary, preliminary, and permanent injunctive relief against Defendants, in addition to restitution in an amount to be proven at trial.

**FIFTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(Common Law)**
**Against All Defendants**

100.     Cisco incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

101.     Defendants unjustly received benefits at the expense of Cisco through their wrongful conduct, as alleged further above. Defendants continue to unjustly retain these benefits at the expense of Cisco.  The unjust receipt of the benefits obtained by Defendants lacks any adequate legal basis and thus cannot conscientiously be retained by Defendants.  Therefore, the circumstances of the receipt and retention of such benefits are such that, as between Cisco and Defendants, it is unjust for Defendants to retain any such benefits.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  102.   Cisco is therefore entitled to full restitution of all amounts and/or other benefits in

2  which Defendants have been unjustly enriched at Cisco's expense, in an amount to be proven at

3  trial.

## PRAYER FOR RELIEF

5  WHEREFORE Cisco respectfully prays for the following relief:

6  A.   For entry of judgment in favor of Cisco and against Defendants on each of Cisco's

7  claims for relief alleged in this Complaint;

8  B.   For a preliminary and permanent injunction restraining Defendants; their officers,

9  agents, servants, employees, attorneys, and affiliated companies; assigns and successors in

10  interest; and those persons in active concert or participation with them, from:

11  (i) importing, exporting, assisting in the importation or exportation, manufacturing,

12  procuring, distributing, shipping, retailing, selling, offering for sale, marketing, advertising, or

13  trafficking in any products not authorized by Cisco and bearing unauthorized simulations,

14  reproductions, counterfeits, copies, or colorable imitations of the Cisco Marks which are likely to

15  cause confusion, or bearing a design that is of a substantially similar appearance to the Cisco

16  Marks listed in this Complaint;

17  (ii) From passing off, inducing, or enabling others to sell or pass off as authentic

18  products produced by Cisco or otherwise authorized by Cisco, any product not manufactured by

19  Cisco or produced under the control or supervision of Cisco and approved by Cisco, which uses

20  any of the Cisco Marks listed in this Complaint; and

21  (iii) From committing any act calculated to cause purchasers to believe that

22  products from Defendants are those sold under the control and supervision of Cisco, or are

23  sponsored, approved, or guaranteed by Cisco, or are connected with and produced under the

24  control or supervision of Cisco;

25  C.   For a determination that Defendants' acts of trademark infringement constitute

26  cases of willful and exceptional infringement;

27

28

1    D.    For actual damages as a result of Defendants' unlawful conduct, alleged above, as

2  well as any profits that are attributable to the alleged conduct and are not taken into account in

3  computing Cisco's actual damages;

4    E.    For maximum statutory damages available under the law to the extent Cisco elects

5  statutory damages for any claim for relief;

6    F.    For punitive damages to the fullest extent available under the law;

7    G.    For reasonable attorneys' fees to the fullest extent available under the law;

8    H.    For treble and/or enhanced damages to the fullest extent available under the law;

9    I.    For full restitution, including restoration of all property unlawfully taken from

10  Cisco, as well as any ill-gotten gains from the unauthorized resale of Cisco's property;

11    J.    For prejudgment interest and the costs of prosecuting these claims to the fullest

12  extent available under the law;

13    K.    For any additional injunctive, specific performance, and/or other provisional

14  remedies, as appropriate; and,

15    L.    For such other and further relief as the Court deems just and proper.

16

17  DATED:   December 4, 2019            SIDEMAN & BANCROFT LLP

18

19                                By:   */s/ Richard J. Nelson*
                                       Richard J. Nelson
20                                     Attorneys for Plaintiffs
                                       Cisco Systems, Inc. and Cisco Technology, Inc.

21

22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1

**JURY DEMAND**

2        Pursuant to Civ. L.R. 3-6 and Fed. R. Civ. Proc. 38, Plaintiffs Cisco Systems, Inc. and

3    Cisco Technology, Inc.  hereby demand a trial by a jury on all issues herein so triable.

4

5    DATED:   December 4, 2019            SIDEMAN & BANCROFT LLP

6

7                                     By:    */s/ Richard J. Nelson*

8                                          Richard J. Nelson
                                           Attorneys for Plaintiffs
9                                          Cisco Systems, Inc. and Cisco Technology, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    2835-211\4223366

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711