JAMES McMANIS (40958)
TYLER ATKINSON (257997)
ANDREW PARKHURST (324173)
McMANIS FAULKNER
A Professional Corporation
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone:   (408) 279-8700
Facsimile:   (408) 279-3244
Email:       aparkhurst@mcmanislaw.com

Attorneys for Defendant and Third Party Plaintiff
Advanced Digital Solutions International, Inc., and
Defendants PureFutureTech, LLC, K&F Associates, LLC,
Shahid Sheikh, Kamran Sheikh and Farhaad Sheikh

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC., a California corporation, and CISCO TECHNOLOGY, INC., a California corporation,<br><br>        Plaintiffs,<br><br>    v.<br><br>ZAHID "DONNY" HASSAN SHEIKH, an individual; et al.,<br><br>        Defendants. | Case No. 4:18-CV-07602-YGR<br><br>**NOTICE OF MOTION AND MOTION BY DEFENDANTS TO STAY CIVIL PROCEEDINGS UNTIL EXPIRATION OF STATUTE OF LIMITATIONS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:   April 21, 2020<br>Time:   2:00 p.m.<br>Dept:   Courtroom 1, 4th Floor<br>Judge   The Hon. Yvonne Gonzalez Rogers |
| ADVANCED DIGITAL SOLUTIONS INTERNATIONAL, INC., a California corporation,<br><br>        Third-Party Plaintiff,<br><br>    v.<br><br>RAHI SYSTEMS, INC., a California corporation; et al.,<br><br>        Third-Party Defendants. | |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 21, 2020, at 2:00 p.m., or as soon thereafter as the parties may be heard, in Courtroom 1, 4th Floor, of the above-entitled court, located at 1301 Clay Street, Oakland, California, Hon. Yvonne Gonzalez Rogers presiding, defendants, Advanced Digital Solutions International, Inc. ("ADSI"), PureFutureTech, LLC, K&F Associates, LLC, Shahid Sheikh, Kamran Sheikh, and Farhaad Sheikh (together "defendants"), will bring for hearing a motion to stay the civil proceedings in this action until the expiration of the statute of limitations pertaining to the possible criminal charges that overlap with, and indeed are the same as, the civil complaint allegations brought in this lawsuit by plaintiffs, Cisco Systems, Inc., and Cisco Technology, Inc., (together "Cisco" or "plaintiff").

The grounds for the motion are that permitting civil discovery while a criminal investigation is threatened would prejudice defendants, who may be forced to choose between asserting their Fifth Amendment rights at trial and being subjected to liability in the civil case. Upon entry of the stay, defendants will agree to provide the Court with status updates at the Court's discretion regarding criminal investigations and charges that may be filed.

This motion is based on the memorandum of points and authorities attached hereto, the attached declaration of Andrew Parkhurst, and upon such other and further pleadings and evidence which may be provided at the hearing.

DATED: March 16, 2020                           McMANIS FAULKNER

                                                /s/ Andrew Parkhurst
JAMES MCMANIS
ANDREW PARKHURST

Attorneys for Defendant and Third Party Plaintiff Advanced Digital Solutions International, Inc., and Defendants PureFutureTech, LLC, K&F Associates, LLC, Shahid Sheikh, Kamran Sheikh and Farhaad Sheikh

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 6

    I.     INTRODUCTION .................................................................................................. 6

    II.    BACKGROUND .................................................................................................... 6

          A.     The Complaint ............................................................................................ 6

          B.     Plaintiff's Refusal to State Whether It Is Participating In A Criminal Investigation or Prosecution ........................................................ 7

          C.     Plaintiff Makes Plain Its Intent To Use Defendants' Invocation Of Their Constitutional Rights Against Them ............................................. 7

          D.     Status of This Litigation and Discovery ..................................................... 9

    III.   ARGUMENT .......................................................................................................... 9

          A.     Legal Standard ............................................................................................ 9

          B.     Each of the *Keating* Factors Favors Granting a Stay in This Action ........ 11

                1.     The Implication of Defendant's Fifth Amendment Rights, and The Prejudice to Defendant, Warrants a Stay of This Action .............................................................................................. 11

                2.     A Stay Would Not Prejudice Plaintiff or Its Interests ................... 13

                3.     The Third *Keating* Favor—the Convenience of the Court and the Efficient Use of Judicial Resources—Does Not Weigh Against the Entry of a Stay ................................................ 14

                4.     No Interests of Third Parties Weigh Against a Stay ...................... 15

                5.     The Interest of The Public Favors a Stay ...................................... 15

    IV.   CONCLUSION ..................................................................................................... 16

# TABLE OF AUTHORITIES

**CASES**

*Blanda v. Martin & Seibert, L.C.*, 2017 WL 63027 (S.D. W.Va. Jan. 5, 2017) ............................ 10

*Brumfield v. Shelton*, 727 F. Supp. 282 (E.D. La. 1989) ............................................................... 11

*Chao v. Fleming*, 498 F.Supp.2d 1034 (W.D. Mich. 2007) ...................................................... 10, 11

*Continental Insurance Co. v. Cota*, 2008 WL 4298372 (N.D. Cal. Sept. 19, 2008) ............... 12, 13

*D.S. v. Geo Grp., Inc.*, 2017 WL 3588793 (D.N.M. Mar. 2, 2017) ................................................ 11

*Doe v. Sipper*, 869 F.Supp.2d 113 (D.D.C. 2012) ......................................................................... 10

*Estate of Limon v. City of Oxnard*, 2013 WL 12131359 (C.D. Cal. Dec. 10, 2013) .............. 10, 11

*Federal Insurance Co. v. Tabb*, 1991 WL 113204 (N.D. Ill. Jun. 7, 1991) ................................... 10

*Federal Savings and Loan Ins. Corp. v. Molinaro*, 889 F.2d 899 (9th Cir. 1989) ....................... 10

*Javier H. v. Garcia-Botello*, 218 F.R.D. 72 (W.D.N.Y.2003) ....................................................... 12

*Jones v. City of Indianapolis*, 216 F.R.D. 440 (S.D. Ind. 2003) ............................................. 11, 12

*Jones v. Conte*, C 04-5312 SI, 2005 WL 1287017 (N.D. Cal. Apr. 19, 2005) ..... 10, 12, 13, 14, 15

*Keating v. Office of Thrift Supervision*, 45 F.3d 322 (9th Cir. 1995) ......... 9, 10, 11, 12, 13, 14, 16

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ..................................................................................... 9

*Matter of Seper*, 705 F.2d 1499 (9th Cir. 1983) ........................................................................... 10

*McCormick v. Rexroth*, 2010 WL 934242 (N.D. Cal. Mar. 15, 2010) .......................................... 12

*Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811 (9th Cir. 1985) ............................................. 15

*Petrov v. Alameda Cty.*, No. 16-CV-04323-YGR, 2016 WL 6563355
    (N.D. Cal. Nov. 4, 2016) ................................................................................. 9, 13, 15

*S.E.C. v. Healthsouth Corp.*, 261 F.Supp.2d 1298 (N.D. Ala. 2003) ........................................... 10

*Salcedo v. City of Chicago*, 2010 WL 2721864 (N.D. Ill. July 8, 2010) ...................................... 11

*SEC v. Dresser Indus., Inc.*, 628 F. 2d 1368 (D.C. Cir. 1980) ......................................... 10, 13, 15

*Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237 (D. Nev. 2017) .............................................. 15

*Silver v. McCamey*, 221 F.2d 873 (D.C.Cir.1955) ........................................................................ 15

*Taylor, Bean & Whitaker Mortg. Corp v. Triduanum*, 2009 WL 2136986
    (E.D. Cal. Jul. 15, 2009) ................................................................................................ 11, 13

*Texaco, Inc. v. Borda*, 383 F.2d 607 (3d Cir. 1967) ....................................................................... 15

*United States v. Henry*, 491 F.2d 702 (6th Cir. 1974) ................................................................... 15

*Walsh Securities, Inc. v. Cristo Property Management, Ltd.*, 7 F.Supp.2d 523
    (D.N.J. 1998) ...................................................................................................................... 10


**STATUTES**

18 U.S.C. § 2320(a) and (b)(3) ......................................................................................................... 7

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    <u>INTRODUCTION</u>

Plaintiffs, Cisco Systems, Inc., and Cisco Technology, Inc., (together "Cisco" or "plaintiff") have accused defendants, Advanced Digital Solutions International, Inc. ("ADSI"), PureFutureTech, LLC, K&F Associates, LLC, Shahid Sheikh, Kamran Sheikh and Farhaad Sheikh (together "defendants") of importing and selling counterfeit Cisco products.  On January 28, 2020, plaintiff alleged, for the first time in this litigation, that it had discovered at least one counterfeit Cisco product, which it claims was sold to the U.S. Army National Ground Intelligence Center by defendants.  Since asserting that allegation, plaintiff has refused to state whether (or to what extent) it is coordinating with law enforcement.  Defendants are now left in the unfair and unjust situation of being compelled to participate in this civil action with the uncertain specter of criminal charges hanging over their heads.

Defendants should not be forced into the untenable position of either answering questions that indisputably relate to serious criminal allegations *or* declining to answer such questions—as is their right under the Fifth Amendment—but thereby acquiescing to serious civil claims.  There is no need to put defendants through this choice.  Indeed, the merits of the case will be better decided by a Jury that has all of the information—a point *plaintiff's* counsel has raised when questioning witnesses.  The interests of justice strongly favor staying these proceedings until the statute of limitations for criminal charges expires.

## II.    <u>BACKGROUND</u>

### A.    <u>The Complaint</u>

Plaintiff filed its initial complaint on December 18, 2018.  Plaintiff has subsequently amended its complaint twice, making the Second Amended Complaint ("SAC"), filed on December 4, 2019, the operative complaint.  The SAC alleges causes of action for Trademark Infringement under 15 U.S.C. sections 1114 and 1125, Unfair Competition under California Business and Professions Code section 17200 *et seq.*, and Unjust Enrichment under California law.  Each of the SAC's causes of action arises from Cisco's allegation that defendants counterfeited and sold Cisco products.

**B.      Plaintiff's Refusal to State Whether It Is Participating In A Criminal Investigation or Prosecution.**

During the course of this litigation, Cisco's repeated threats and allegations have suggested a credible possibility that Cisco would attempt to instigate a parallel criminal prosecution in addition to its civil action for strategic purposes. That possibility became even more acute when, on January 28, 2020, Cisco informed defendants that, in its belief, it had determined that a particular Cisco product was counterfeit. (Parkhurst Decl., ¶ 2, Exh A.) Cisco further alleged that this product was sold by defendants to the U.S. Army National Ground Intelligence Center. (*Id.*) Cisco's allegation, if true, could expose defendants to severe and enhanced criminal liability. *See* 18 U.S.C. § 2320(a) and (b)(3).

Given the specifics of plaintiff's new allegation, defendants, in turn, asked Cisco at the February 19, 2020, case management conference, in no uncertain terms, whether and to what extent plaintiff has or had been in contact with the United States Attorney's Office ("USAO"). (Parkhurst Decl., ¶ 3.) Plaintiff refused to answer the question. (*Id.*) On February 27, 2020, defendants again asked plaintiff's counsel whether his office had been in contact with the USAO. (*Id.*, ¶ 3, Exh. B.) Plaintiff, however, once again refused to answer defendants' simple and direct inquiry. (*Id.*)

Plaintiff has had ample opportunity to disabuse defendants of their reasonable concern that plaintiff has or will instigate a criminal prosecution. Because plaintiff has remained silent, it should not now be heard to diminish defendants' concerns.

**C.      Plaintiff Makes Plain Its Intent To Use Defendants' Invocation Of Their Constitutional Rights Against Them.**

To date, plaintiff has already taken two depositions during which its counsel made clear that it intends to use defendants' invocation of the Fifth Amendment against them. During the deposition of Farhaad Sheikh, for example, plaintiff's counsel asked questions that demonstrating plaintiff's intent to argue to the jury that Cisco has no "innocent explanation" for refusing to answer its questions:

- Q: And if Cisco were to file a motion with the Court to preclude any testimony from ADSI as to an innocent explanation of -- for -- for this practice, Cisco would be prejudiced because now we have an opportunity -- we're sitting with the CEO of the company. We have the opportunity to hear from you as to why this was done that

would explain away the curiosity of getting these receiving points hundreds of miles away.  Now's the chance for us to hear this so we can address it before any kind of motion.  Do you want to provide any information that would shed light on this?

- Q: Do you admit that the reason why your brother and your company got these other locations to receive products is to evade detection from Customs?

- Q: Do you admit that you knew that the products that were being imported from China were counterfeit?

- Q: And that a way to get these products into the United States so you can sell them to the U.S. government and others was to hide your activity from Customs?  Do you admit that?

- Q: Do you intend at any point to dispute the fact that you knowingly imported counterfeit Cisco products?

- Q: As CEO of ADSI, do you admit that ADSI knowingly imported counterfeit Cisco products?

- Q: At any point in time, do you intend, as CEO of the company, to contend otherwise that ADSI did not know these products were -- were counterfeit?

(Parkhurst Decl., ¶ 4, Exh. C, 165:16-167:24.)

During the deposition of Kamran Sheikh, plaintiff's counsel also asked various questions that contained either explicit or implied threats that the deponent's assertions of his constitutional rights would be leveraged for strategic purposes in this action.  Indeed, plaintiff's counsel went even further by asking questions that were *not* aimed at uncovering relevant evidence, but were instead designed to exploit the deponent's assertion of his constitutional rights.

For example, plaintiff's counsel asked (but really just stated) "do you understand that -- that the Court may foreclose you from making [a particular] argument in this case unless you answer those questions here today?"  (*Id*., ¶ 4, Exh. D, 56:25-58:4.)  Counsel also asked (but really just badgered) the deponent "because you've got a good faith basis, according to your counsel, to be concerned about these answers, you **would rather refuse to answer the questions than provide your side of the story about these products**?"  (*Id.*)  And, after it was clear the deponent intended to invoke his Fifth Amendment rights, plaintiff's counsel went further, asking questions like "[you will not answer the question] because your side is hurtful to you?" and "if you were to answer these questions, it would actually implicate you in having knowingly purchased and sold counterfeit Cisco products?"  (*Id.*)  Plaintiff's counsel's

questioning during Mr. Sheikh's deposition confirms that Cisco is using its threats of criminal allegations as leverage in this proceeding. But the Court does not need to read between the lines of deposition transcripts to divine plaintiff's true intent in dangling threats of criminal exposure over defendants' heads. Plaintiff's counsel himself confirms in his biography on his firm's website that deploying criminal threats to accomplish litigation objectives is just another page in his playbook. (*Id.*, ¶ 5, (Sideman & Bancroft Online Profile for Richard J. Nelson) (stating that one of Mr. Nelson's litigation objectives is to work "with law enforcement and prosecutors to obtain investigations and prosecutions").) Plaintiff's strategy here smacks of gamesmanship.

### D. Status of This Litigation and Discovery.

Due to plaintiff's own lack of diligence, this case remains in a somewhat nascent stage. Indeed, after a largely dilatory approach to discovery, plaintiff had to move this Court to re-open discovery less than two weeks before the prior discovery cutoff date. (*Id.*, ¶ 6.) Though some document and written discovery has taken place, such discovery was limited and mostly initiated in the past two months. (*Id.*) Additionally, while a trial date has been set, there are no outstanding or pending dispositive motions or any other significant litigation events or deadlines on the horizon. In short, the impact of staying these proceedings on judicial resources or economy would be *de minimis*.

## III. ARGUMENT

### A. Legal Standard

This Court has recognized in granting a stay due to pending criminal proceedings in another case, "[a] district court is vested with the discretion to stay an action based on its inherent authority to control its own docket." *Petrov v. Alameda Cty.*, No. 16-CV-04323-YGR, 2016 WL 6563355, at *2 (N.D. Cal. Nov. 4, 2016) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). While "there is no requirement that a court stay a civil action pending the outcome of a related criminal proceeding, a court may choose to do so 'when the interests of justice seem[ ] to require such action.'" *Id.* (quoting *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995)). Indeed, courts may exercise their discretion to stay civil proceedings,

postpone civil discovery, or impose protective orders. *SEC v. Dresser Indus., Inc.*, 628 F. 2d 1368, 1375 (D.C. Cir. 1980).

It is well recognized in the Ninth Circuit that the "decision . . . to stay civil proceedings in the face of a parallel criminal proceeding should be made 'in light of the particular circumstances and competing interests involved in the case'" and the "extent to which the defendant's Fifth Amendment rights are implicated." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) (quoting *Federal Savings and Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989)). The Fifth Amendment privilege against self-incrimination may be invoked by the mere possibility of criminal prosecution. *Matter of Seper*, 705 F.2d 1499, 1501 (9th Cir. 1983). In granting a similar request, Judge Illston described the *Keating* factors, explaining that:

> [t]he decision whether to stay civil proceedings in the face of a parallel criminal proceeding should be determined based on the circumstances and competing interests involved in the case. The court should consider the following factors: 1) the extent to which the defendant's Fifth Amendment rights are implicated; 2) the interest of the plaintiff in proceeding with the litigation and the potential prejudice to plaintiff of a delay; 3) the convenience of the court and the efficient use of judicial resources; 4) the interests of third parties; and 5) the interests of the public.

*Jones v. Conte*, C 04-5312 SI, 2005 WL 1287017, at *1 (N.D. Cal. Apr. 19, 2005) (citing *Keating*, supra, 45 F. 3d at 324). As set forth below, each of these factors favors granting the requested stay.

While stays are often granted where the defendant has already been criminally charged, numerous courts have granted requests to stay civil proceedings **even when the movant had not yet been indicted**. *See, e.g., Estate of Limon v. City of Oxnard*, 2013 WL 12131359, at *4 (C.D. Cal. Dec. 10, 2013) (staying several aspects of civil proceeding even though an indictment had not been issued); *Walsh Securities, Inc. v. Cristo Property Management, Ltd.*, 7 F.Supp.2d 523 (D.N.J. 1998) (granting motion to stay even though no indictment had been returned); *Federal Insurance Co. v. Tabb*, 1991 WL 113204 (N.D. Ill. Jun. 7, 1991) (same); *S.E.C. v. Healthsouth Corp.*, 261 F.Supp.2d 1298, 1326 (N.D. Ala. 2003) (same); *Chao v. Fleming*, 498 F.Supp.2d 1034, 1038 (W.D. Mich. 2007) (same); *Blanda v. Martin & Seibert, L.C.*, 2017 WL 63027 (S.D. W.Va. Jan. 5, 2017) (same); *Doe v. Sipper*, 869 F.Supp.2d 113 (D.D.C. 2012) (same); *Jones v.*

*City of Indianapolis*, 216 F.R.D. 440 (S.D. Ind. 2003) (granting motion for limited stay before an indictment had issued, while criminal investigation was pending); *Brumfield v. Shelton*, 727 F. Supp. 282 (E.D. La. 1989) (granting a stay when the civil defendant was a target of a grand jury investigation); *Salcedo v. City of Chicago*, 2010 WL 2721864, at *3 (N.D. Ill. July 8, 2010) (granting stay as to all civil defendants, even though some had not yet been indicted). A stay in a civil proceeding prior to indictment, therefore, is clearly within a court's inherent powers. *See Chao v. Fleming*, 498 F.Supp.2d 1034, 1038 (W.D. Mich. 2007) ("[A] stay should not be categorically denied solely because the defendant has not yet been indicted.").

Where no indictment has been made, courts are permitted to grant stays until the statute of limitations for the potential criminal charges expires. *D.S. v. Geo Grp., Inc.*, 2017 WL 3588793 (D.N.M. Mar. 2, 2017) is instructive. There, after granting a stay, the district court elected to "partially lift the stay to permit full formal discovery between" the parties except as to one individual defendant "insofar as discovery would request statements or testimony by the [individual defendant], at least until the criminal statute of limitations ha[d] run." *Id.* at *3.

**B. Each of the *Keating* Factors Favors Granting a Stay in This Action.**

1. The Implication of Defendant's Fifth Amendment Rights, and The Prejudice to Defendant, Warrants a Stay of This Action.

The potential burden to defendant's constitutional rights strongly weighs in favor of a stay. Though defendants are not presently aware whether an indictment is forthcoming, their Fifth Amendment rights has been and continues to be implicated by being required to participate in discovery in this action. *See Estate of Limon v. City of Oxnard*, 2013 WL 12131359, at *4 (C.D. Cal. Dec. 10, 2013) ("[T]he absence of an indictment does not obviate the [defendants'] Fifth Amendment concerns"); *Taylor, Bean & Whitaker Mortg. Corp v. Triduanum*, 2009 WL 2136986, at *8-9 (E.D. Cal. Jul. 15, 2009) (noting "the mere possibility of criminal prosecution" is "all that is necessary for the Fifth Amendment privilege against self-incrimination to be invoked"). When courts analyze this *Keating* factor, the inquiry centers on the degree to which the criminal allegations would overlap with allegations asserted in the civil action. "Some courts

MOTION BY DEFENDANTS TO STAY CIVIL PROCEEDINGS UNTIL EXPIRATION OF STATUTE OF LIMITATIONS; Case No. 4:18-CV-07602-YGR

have gone so far as to recognize the extent of the overlap as the 'most important factor'" in the *Keating* analysis. *McCormick v. Rexroth*, 2010 WL 934242, at *2 (N.D. Cal. Mar. 15, 2010)

For example, in *Jones*, the defendant Victor Conte was involved in a criminal case regarding allegations of unlawful distribution of performance enhancing drugs, while also involved in a civil case premised on allegations of defamation and tortious interference with business relations. *Jones*, 2005 WL 1287017. Judge Illston determined that both the civil and criminal cases arose from the defendant's alleged involvement in the distribution of performance-enhancing drugs, "as the veracity of his statements regarding plaintiff's actions directly relate[d] to his involvement with the distribution of performance-enhancing drugs." *Id.* at 2. As such, Judge Illston granted the requested stay as follows:

> The Court finds that a stay is proper because '[i]f discovery moves forward, [the] defendant will be faced with the difficult choice between asserting [his] right against self-incrimination, thereby inviting prejudice in the civil case, or waiving those rights, thereby courting liability in the criminal case.'

*Id.* (citing *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y.2003)).

Likewise, Judge Conti in *Continental Insurance Co. v. Cota*, 2008 WL 4298372 (N.D. Cal. Sept. 19, 2008) reached a similar conclusion. There, the defendant John Cota, was the captain of a cargo ship that collided with the Oakland Bay Bridge, resulting in criminal and civil liability. *Id.* In applying the *Keating* factors, Judge Conti found that a stay of the civil action was warranted, noting that "[i]t is undisputed that all of the civil actions and the criminal action spring from the same nucleus of facts…" *Id.* at 2. Judge Conti further determined that "[i]t is difficult to imagine how adjudication of th[e] issue [in the civil proceeding] would not implicate many of the factual issues underlying the criminal action." *Id.* Accordingly, the court concluded, "discovery propounded on Cota in the underlying civil action will likely implicate his fifth amendment right." *Id.* A stay, therefore, was ordered by the court.

In this case, it cannot reasonably be disputed that this action centers on the same nucleus of facts as a future criminal proceeding against defendants. Here, plaintiff's claims arise from its counterfeiting allegations, a federal crime. Plaintiff's counsel has not confirmed or denied that his office is working in coordination with the government on possible criminal prosecution.

(Parkhurst Decl., ¶ 3, Exh. B.)  Indeed, the possible criminal proceedings at issue here would be far more similar to the underlying civil claim than those in *Jones* and *Cota*.  Given the proximity between the counterfeiting allegations in this action and a potential criminal proceeding for the same, defendant cannot participate in discovery in this case without being forced to decide between providing substantive responses to plaintiff's requests or invoking his Fifth Amendment rights.  This is the precise type of dilemma that stays are designed to avoid.  *Petrov v. Alameda Cty.*, No. 16-CV-04323-YGR, 2016 WL 6563355, at *3 (N.D. Cal. Nov. 4, 2016) (finding that because "the factual allegations in the felony complaint [we]re essentially identical to the allegations in the [civil] complaint," as they both "involve[d] the exact same incident," the Fifth Amendment concerns were "significant," and therefore this factor weighed "strongly in favor of granting a stay").

Moreover, allowing this action to proceed without a stay may unfairly enable law enforcement to monitor this proceeding for the purpose of obtaining potentially incriminating evidence and other advantages through the broader discovery afforded to parties under the Federal Rules of Civil Procedure.  The possibility of preparing its criminal case through Cisco's civil litigation would undermine, not only defendants' Fifth Amendment rights, but also concepts of fundamental fairness and due process.  In *Taylor, Bean & Whitaker*, where a stay of civil proceedings pending parallel criminal proceedings was ordered, the court explained "[t]he parallel civil proceeding 'might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expand the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case.'"  *Taylor, Bean & Whitaker*, 2009 WL 2136986, at *2 (citing *SEC v. Dresser*, 628 F.2d at 1376).  As such, proceeding without a stay may permit the government to circumvent the Federal Rules of Criminal Procedure by piggybacking on Cisco's discovery in this case.  Principles of fairness, therefore, weigh in favor of granting the stay.

2. <u>A Stay Would Not Prejudice Plaintiff or Its Interests</u>.

The second *Keating* factor also weighs in favor of granting the requested stay.  The damages alleged and sought by plaintiff are primarily monetary in nature.  Plaintiff has not

sought temporary or preliminary injunctive relief during these proceedings. Should plaintiff ultimately prevail in this action, it will make no difference whether it seeks to enforce that judgment in the short term or after the statute of limitations for the related criminal charges expires. A stay, therefore, will not prejudice plaintiff.

Should plaintiff make any claim to the contrary, it would be impeached by its own conduct in initiating this lawsuit. After all, plaintiff did not initiate these proceedings until at least one year after it first knew about the alleged conduct at issue. (Parkhurst Decl., ¶ 6.) And plaintiff sat on its hands in pursuing discovery in this case—so much so that plaintiff had to move the Court to extend the fact discovery deadline in order to make up for its lack of diligence. (*Id.*) Any claim in opposition to this Motion regarding prospective prejudice caused by a stay, therefore, should be examined in light of plaintiff's dilatoriness in bringing, and prosecuting, its claims.

In light of the foregoing, plaintiff's interests will not be adversely impacted by a stay.

3. The Third *Keating* Favor—the Convenience of the Court and the Efficient Use of Judicial Resources—Does Not Weigh Against the Entry of a Stay.

A stay will promote the efficient use of judicial resources. This case is still relatively new, with a second complaint filed in December. No dispositive motions are pending. A stay, therefore, would not cause undue interruptions to any portion of the proceedings. As the *Jones* court concluded, "[s]taying the case makes efficient use of judicial resource by insuring that common issues of fact will be resolved and subsequent civil discovery will proceed unobstructed by concerns regarding self-incrimination." *Jones*, 2005 WL 1287017 at *2 (internal citations omitted).

Due to the potential for criminal investigation, this Court will likely be burdened by several discovery disputes pertaining to defendant's invocation of the Fifth Amendment. Furthermore, should a criminal investigation be initiated, it very well may be the case that defendant will not be able to provide substantive discovery responses, even if he did not want to invoke his privilege against self-incrimination, since law enforcement may seize, among other things, defendant's products, computers, computer media, and hard copy documents. This would

disserve judicial economy as it would create additional delays and motion practice. The convenience of the Court weighs in favor of a stay, and ensures that civil discovery is not impeded by self-incrimination concerns and other delays caused by a criminal investigation.

    4. <u>No Interests of Third Parties Weigh Against a Stay.</u>

The interest of persons not parties to this action will not be affected by a stay. There are no other parties who may be affected by this action that are not already involved in this action.

    5. <u>The Interest of The Public Favors a Stay.</u>

The interest of the public favors a stay because "the public . . . has an interest in safeguarding the integrity of criminal proceedings." *Petrov v. Alameda Cty.*, No. 16-CV-04323-YGR, 2016 WL 6563355, at *7 (N.D. Cal. Nov. 4, 2016); *see also Jones,* 2005 WL 1287017, at *2 ("the public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant.").

Further, the law has a "strong preference" that cases should be decided on their merits. *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 243 (D. Nev. 2017); see *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985) ("Whenever it is reasonably possible, cases should be decided upon their merits.") As *plaintiff's* counsel has made clear, the Jury stands to be deprived of information if the case is not stayed. Absent a stay, defendants will have no choice but to stand by their Constitutional rights. The Jury will have a more difficult time assessing the merits of this case until the threat of criminal prosecution has diminished.

"If delay of the noncriminal proceeding would not seriously injure the public interest, a court may be justified in deferring it." *SEC v. Dresser Indus., Inc.*, 628 F. 2d 1368, 1376, *see, e.g.*, *United States v. Henry*, 491 F.2d 702 (6th Cir. 1974); *Texaco, Inc. v. Borda*, 383 F.2d 607, 608-609 (3d Cir. 1967); *Silver v. McCamey*, 221 F.2d 873, 874-875 (D.C.Cir.1955). Here, the public interest lies in preserving the integrity of any criminal case. A stay would advance, not hinder, the public interest.

///

///

///

MOTION BY DEFENDANTS TO STAY CIVIL PROCEEDINGS UNTIL EXPIRATION OF STATUTE OF LIMITATIONS; Case No. 4:18-CV-07602-YGR

## IV. CONCLUSION

Because each of the *Keating* factors strongly weighs in favor of granting a stay, defendant respectfully requests that the Court enter an order that stays these proceedings until the expiration of the statute of limitations for the related criminal charges.

DATED: March 16, 2020             McMANIS FAULKNER

/s/ Andrew Parkhurst
JAMES MCMANIS
ANDREW PARKHURST

Attorneys for Defendant and Third Party Plaintiff Advanced Digital Solutions International, Inc., and Defendants PureFutureTech, LLC, K&F Associates, LLC, Shahid Sheikh, Kamran Sheikh and Farhaad Sheikh