UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA **ORIGINAL**

Before The Honorable YVONNE GONZALEZ ROGERS, Judge

| | | |
|---|---|---|
| CISCO SYSTEMS, INC., a | ) | **Case Management Conference** |
| California corporation, an | ) | |
| CISCO TECHNOLOGY, INC., a | ) | |
| California corporation, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | NO. C 18-07602 YGR |
| | ) | |
| ZAHID "DONNY" HASSAN SHEIK | ) | |
| an individual; et al., | ) | **Pages 1 - 28** |
| | ) | |
| Defendants. | ) | Oakland, California |
| _____ | ) | Wednesday, February 19, 2020 |
| ADVANCED DIGITAL SOLUTIONS | ) | |
| INTERNATIONAL, INC., a | ) | |
| California corporation, | ) | |
| | ) | |
| Third-party Plaintiff | ) | |
| v. | ) | |
| | ) | |
| RAHI SYSTEMS, INC., a | ) | |
| California corporation, et | ) | |
| al., | ) | |
| | ) | |
| Third-party Defendant. | ) | |
| _____ | ) | |

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

APPEARANCES:

For Plaintiffs:            Sideman & Bancroft LLP
                           One Embarcadero Center, 22nd Floor
                           San Francisco, California  94111-3711
                    BY:  RICHARD J. NELSON, ATTORNEY AT LAW


Reported By:          Raynee H. Mercado, CSR No. 8258


     Proceedings reported by electronic/mechanical stenography;
transcript produced by computer-aided transcription.

### A P P E A R A N C E S (CONT'D.)

```
For Defendants ASDI;      McManis Faulkner, PC
PureFutureTech, LLC;      50 West San Fernando Street
K&F Associates, LLC;      10th Floor
Shahid Sheikh; Kamran     San Jose, California  95113
Sheikh, Farhaad    BY:   R. TYLER ATKINSON,
Sheikh:                   ANDREW PARKHURST, ATTORNEYS AT LAW


For Defendant Little:     Crosby & Crosby, PC
                          1570 The Alameda, Suite 200
                          San Jose, California  95126
                   BY:    MATTHEW A. CROSBY, ATTORNEY AT LAW



For Defendant Imran       James Giacchetti, Attorney at Law
Husain:                   45 East Julian Street
                          San Jose, California  95112



For Third-Party           Donahue Fitzgerald LLP
Defendants:               1999 Harrison Street, 25th Floor
                          Oakland, California  94612-3520
                   BY:    KATHLEEN B. FRIEND,
                          JOHN C. KIRKE, ATTORNEYS AT LAW

(Telephonic Appearance)

For Defendants IT         Robinson di Lando, PC
Devices Online, Inc.      801 S. Grand Avenue, Suite 500
and Zahid "Donny"         Los Angeles, California  90017
Sheikh:            BY:    BRAD STUCKEY, ATTORNEY AT LAW


                      --o0o--
```

```
1    Wednesday, February 19, 2020                    2:04 p.m.

2                        P R O C E E D I N G S

3             THE CLERK:  Calling civil action 18-7602, Cisco

4    systems versus Shahid Sheikh.

5         Counsel, please come forward and state your appearances.

6             MR. NELSON:  Good afternoon, Your Honor.  Richard

7    Nelson on behalf of plaintiffs.

8             THE COURT:  Good afternoon.

9             MR. KIRKE:  Good afternoon, Your Honor.  John Kirke

10   and Kathleen Friend on behalf of the third-party defendants.

11            MR. ATKINSON:  Good afternoon, Your Honor.  Tyler

12   Atkinson with McManis.

13            MR. STUCKEY:  Good afternoon, Your Honor.  Brad --

14            THE COURT:  Hold on.  Hold on.  Hold on.

15                      (Simultaneous colloquy.)

16            MR. STUCKEY:  Oh, sorry.

17            THE COURT:  I'll let you know when to talk.

18        All right.  So it's Mr. Kirke, is it?

19            MR. KIRKE:  Yes, Your Honor.

20            THE COURT:  Okay.

21        All right.  Now.

22            MR. ATKINSON:  Good afternoon, Your Honor.  Tyler

23   Atkinson with McManis Faulkner here on behalf of the

24   defendants Farhaad Sheikh, Shahid Sheikh, Kamran Sheikh, ADSI,

25   PureFutureTech, and K&F Associates.
```

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

```
 1          And with me also is my colleague Andrew Parkhurst.
 2          THE COURT:  And Mr. Stuckey on the phone?
 3          MR. STUCKEY:  Yes.  I apologize for interrupting
 4    there, Your Honor.  Brad Stuckey on behalf of defendants
 5    Shahid Sheikh and IT Devices Online, Inc.
 6          THE COURT:  Okay.  I have more?
 7          MR. GIACCHETTI:  Yes.
 8          THE COURT:  Who else do I have?
 9          MR. GIACCHETTI:  Good afternoon, Your Honor.  James
10    Giacchetti representing Imran Husain.
11          THE COURT:  Okay.
12          MR. CROSBY:  Good afternoon, Your Honor.  Matthew
13    Crosby representing defendant Jessica Little.
14          THE COURT:  Hmm.  I'm not seeing you on here.
15          MR. CROSBY:  Your Honor, we substituted in --
16          THE COURT:  I see it.  I see it now.
17                   (Simultaneous colloquy.)
18          THE COURT:  Okay.
19       All right.  So you need new dates.  Right?
20          MR. NELSON:  We do, Your Honor.
21          THE COURT:  And does there need to be any order
22    limiting the extension of any of these dates to just the new
23    parties, or everybody's agreed that all of the dates are
24    extended as to all parties?
25          MR. ATKINSON:  Your Honor, I --
```

1    **THE COURT:**  So you need to identify yourselves.

2    There are too many people here.  I don't know you.

3    **MR. ATKINSON:**  Thank you, Your Honor.

4    Tyler Atkinson for the -- I've been calling them the ADSI

5    defendants.  It's the Sheikhs, ADSI, PureFutureTech, and K&F.

6    We have discussed this with our co-defendants, and we

7    believe the dates that are presented in the settlement --

8    excuse me -- the settle -- the -- case -- case management

9    conference statement -- the joint statement that was filed

10   with the court last week -- we agree on those dates.

11   So to the extent there's a question pending from the court

12   about whether or not there need to be special exceptions, we

13   believe the dates in that statement work for all parties.

14   **THE COURT:**  Okay.  Mr. Nelson?

15   **MR. NELSON:**  Your Honor, Richard Nelson for the

16   plaintiffs.

17   Your Honor, the -- when we filed the joint CMC statement,

18   that was plaintiffs' hope as well, although we did note in a

19   footnote to the CMC statement that there may be occasion

20   because of third-party discovery that these dates may not

21   hold.

22   Unfortunately, I think that is the situation we find

23   ourselves in.  The --

24   **THE COURT:**  But I don't think I ever issued an order,

25   for instance, vacating any of the dates which I originally set

```
 1    in Docket 37.  Right?

 2              MR. NELSON:  You did --

 3              THE COURT:  And I don't think that I did because I

 4    was waiting to find out what was happening --

 5              MR. ATKINSON:  Your Honor, I believe the court -- we

 6    had a call on January 13th where the court did vacate and

 7    Mr. Nelson can correct me if I'm wrong, but -- as to the

 8    discovery and expert discovery, that was vacated and to be set

 9    at this appearance.

10         And when the court's prepared, the ADSI defendants do have

11    a position as to what Cisco is proposing.

12              THE COURT:  All right.

13         But then none of the other dates, then, were reset.

14              MR. ATKINSON:  No, including the trial date.  That

15    has not been reset.

16              THE COURT:  Okay.

17         So what you've proposed, though -- I mean, there --

18    there's a joint proposal except for this footnote as to

19    third-party discovery, right?

20              MR. NELSON:  Correct, Your Honor.

21              THE COURT:  Okay.

22         So does anybody have any comments with respect to the

23    proposed discovery excluding the issue of -- of third-party

24    discovery?

25              MR. KIRKE:  Your Honor, John Kirke for the
```

1    third-party defendants.

2       We don't have any issues, and our -- the stipulated dates

3    in the joint statement are acceptable to the third-party

4    defendants.

5           **THE COURT:**  Okay.

6      Mr. Atkinson?

7           **MR. ATKINSON:**  Your Honor, if I may address the

8    footnote?

9           **THE COURT:**  No.

10          **MR. ATKINSON:**  Your Honor, we have no issue with

11    the --

12          **THE COURT:**  Okay.

13          **MR. ATKINSON:**  -- proposed dates.

14          **THE COURT:**  Mr. Crosby?

15          **MR. CROSBY:**  No issue, Your Honor.

16          **THE COURT:**  Mr. Giacchetti?

17          **MR. GIACCHETTI:**  No issues, Your Honor.

18          **THE COURT:**  I got everybody, right?

19          **MR. ATKINSON:**  Yes, Your Honor.

20          **MR. KIRKE:**  Mr. Stuckey on the line, Your Honor?

21          **THE COURT:**  But Mr. Stuckey, isn't he with you?

22      Isn't he with someone else?

23          **MR. STUCKEY:**  Yes.  No -- Your Honor, no objection.

24          **THE COURT:**  I thought Mr. Stuckey was with

25    Mr. Atkinson.

```
 1          MR. ATKINSON:  I'm Mr. Atkinson.
 2      Mr. Stuckey, I believe, represents a settled defendant.
 3          MR. STUCKEY:  Yes, we're finalizing a settlement,
 4   Your Honor.
 5          THE COURT:  Okay.
 6      Mr. Parkhurst?
 7          MR. PARKHURST:  Yes, Your Honor?
 8          MR. ATKINSON:  Mr. Parkhurst is with me.  He's with
 9   McManis Faulkner representing the ADSI defendants.
10          THE COURT:  Hmm.  You all come up as representing the
11   same defendant.
12      So, Mr. Stuckey, who is it you're representing, the
13   settling party?
14          MR. STUCKEY:  Zahid Donny Sheikh and IT Devices
15   Online, Inc.
16          THE COURT:  Okay.  When we're done with this,
17   Mr. Stuckey and Mr. Atkinson need to make sure that the
18   courtroom deputy knows who you're representing because I'm
19   looking at these -- the printout of the docket sheet, and you
20   all come up together, which is why I was confused.  So just
21   make sure that our records are accurate.
22      Okay.
23      With respect, then, to the dates you have asked for --
24      Well, all right.  Now that I know there's no objection.
25   Now what do you want to say about the footnote?
```

1          **MR. NELSON:**  Thank you, Your Honor.  Richard Nelson

2     for the plaintiffs.  The court set this case management

3     conference in order to welcome the new defendant into the --

4     the case and make sure that the -- the dates were acceptable

5     to the new defense counsel.

6          And so that's why the court had -- that's why the court

7     vacated the regular discovery cutoff and the expert discovery

8     cutoff in order to -- to give the opportunity for -- for Imran

9     Husain's counsel to engage in this litigation as -- as

10    appropriate.  And we're doing that.

11         And based on the proposed recommended new fact discovery

12    cutoff to Your Honor, which is March 20th, I think that would

13    accommodate what plaintiffs need to accomplish with the

14    defendants in this case.

15         We have to post this CMC.  We'll be able to then engage

16    with Imran Husain's counsel about a deposition date.  We had

17    to wait until today.  And we have other depositions that you

18    set with the other defendants.  So we'll be able to clear the

19    discovery with the other defendants.

20         The problem with the third-party discovery, Your Honor,

21    is -- and if I may provide a little bit of detail, this is a

22    counterfeiting case in which Cisco is claiming that the

23    defendants manufactured counterfeit Cisco products here in

24    Fremont by importing products from China and labeling them in

25    Fremont and then selling them predominantly to the U.S.

1    government.

2         So Cisco has sent third-party subpoenas to various

3    government entities.  We've received responses and pictures of

4    the products that were sold as well as what are called console

5    readouts, so electronic information for these switches.  And

6    we're able to determine that products with the National

7    Grounded Intelligence Center, which is the Army, and the Navy

8    of -- the strategic missile facility for the Navy are, in

9    fact, counterfeit.

10        We're receiving those products from the -- those

11   government entities, and we'll make them available to the

12   defense counsel and their experts.

13        There are some additional entities.  The USDA has also

14   provided information regarding counterfeit products that were

15   sold by the defendants.  But we have a number of other

16   third-party requests out to various government entities to

17   obtain those products.

18        It may take some time.  Unfortunately, government doesn't

19   necessarily always operate as quickly as one would like.  And

20   so we're engaging with the -- with the procurement officers at

21   these various entities in order to get the products.  So

22   that's one.

23        One set is -- is government and customers who have the

24   counterfeit products.

25        Another set is a very substantial customer of the

```
1    defendants, which was a company called Dexon Computers in

2    Minnesota.  What the defendants did was they imported products

3    from a company called HongKong Sellsi, which is a company in

4    China, and sold a lot of those products to -- to Dexon.

5         Cisco has sued HongKong Sellsi in -- in this court

6    Northern District with Judge Freeman.  And HongKong Sellsi

7    defaulted on that.  But in the complaint against HongKong

8    Sellsi we showed photographs of the switch, which is -- which

9    is operating government intelligence and -- and data

10   communications in which HongKong Sellsi or somebody else in

11   China had soldered a component onto the motherboard of this

12   networking switch, and that was then sold to a bank in Nevada.

13        So we have grave concern about products coming from China

14   through HongKong Sellsi that have been distributed to the

15   United States.  And that concern is, of course, magnified

16   given the -- the customers that the defendants here sold to.

17        This particular customer, Dexon, we have -- we subpoenaed

18   them last year for their records --

19             THE COURT:  How do you spell that?

20             MR. NELSON:  D-e-x-o-n.

21             THE COURT:  Okay.

22             MR. NELSON:  We subpoenaed Dexon last year for their

23   records to show the products that they bought from the

24   defendants and then where those products are now.  So that we

25   could similarly do third-party discovery with the entities
```

1    that have the HongKong Sellsi products.

2        We been engaged in meet-and-confer with Dexon.  Dexon is

3    not very cooperative.  I was on a phone call with them earlier

4    this week.  And I think we might have now reached some sort of

5    an accommodation.  If not, then we'll be filing a motion in

6    Minnesota to enforce the subpoena.

7        Once we get those documents, Your Honor, then our

8    expectation at that point is to find these HongKong Sellsi

9    products with the end customers be able to then identified

10   them, have pictures, et cetera, for the jury.  And this is

11   obviously going to be really important for plaintiff's damage

12   calculations.

13       So that's a second category of -- of third-party

14   discovery.

15       Actually a third category is in defendants' control.  So

16   we have made a request under Rule 26 for supplemental

17   discovery to the -- 'cause the information that we have from

18   the ADSI defendants is -- is time limited.  It was provided

19   last year, and so we have information up through approximately

20   the summer of 2019.

21       We do believe that ADSI continues to sell Cisco products,

22   and so we did make a request recently for ADSI to supplement

23   their discovery showing the products that they purchased and

24   sold after the -- their last production to Cisco.

25       We're still waiting on that.  We're still meeting and

1    conferring with Mr. Atkinson and Mr. Parkhurst on that

2    request.  But whether we get that information, we would intend

3    similarly to then try to track those products down.  We have a

4    burden at trial.  We understand Your Honor to prove the

5    products that the defendants sold are counterfeit.

6       And so we would need to -- to go to those third parties in

7    order to try to identify and -- and then examine those

8    products.

9       So I think, Your Honor, in -- in summary -- well, there is

10   some other discovery coming in the next -- actually tomorrow

11   and Friday and then next week and then -- and then next month

12   with regard to the defendants themselves.  So we would -- we

13   would complete all of the defendant discovery by March 20th.

14      I -- I do want to just highlight this issue with regard to

15   the additional discovery that we're going to need from third

16   parties, and we're going to need some additional time for that

17   so either -- and whatever the court thinks is best is to push

18   the full discovery cutoff out a bit in order to allow this

19   third-party discovery to take place.

20      We can keep the trial date where it is.  The plaintiffs

21   really would like to keep the trial date.  We don't want to

22   cause any inconvenience --

23          **THE COURT:**  You don't have a trial date other than --

24   that is, you're -- the trial date that you currently have is

25   September 28th.  That's the trial date you're thinking about?

```
1          MR. NELSON:  The -- yeah, I think that trial date is
2     the one that the court originally set at the original CMC.
3          THE COURT:  Right.
4          MR. NELSON:  And the court did not vacate that in
5     our --
6          THE COURT:  Correct.
7          MR. NELSON:  -- in our hearing on the 13th.  So --
8          THE COURT:  So when you say you want to keep the
9     trial date, do you mean that date, or do you mean the date
10    that you thought I heard unanimous agreement on a revised
11    trial date?
12         MR. NELSON:  Thank you, Your Honor.  Thank you for
13    the -- for the clarification.  I apologize.
14       So because we were pushing some dates out by a month, we
15    did -- we did come up with a recommended new trial date which
16    would then allow the court to hear dispositive motions,
17    et cetera, in the -- in the time that the court had originally
18    set.
19       We can -- we can revisit that.  Plaintiffs are -- are
20    certainly willing to revisit that recommendation.
21       Our main concern though, Your Honor, is -- is the
22    flexibility with regard to this important third-party
23    discovery.
24         MR. ATKINSON:  And, Your Honor, when the court is
25    ready, I'd like to respond.
```

1      **THE COURT:**  Go ahead.

2      **MR. ATKINSON:**  Tyler Atkinson for the ADSI

3   defendants.

4      Your Honor, I think it goes without saying that these

5   allegations are disputed.  We're not hearing the facts right

6   now or the evidence.

7      The -- I think there's disagreement over the genesis of

8   this appearance.  This appearance -- excuse me.

9      This appearance started with an agreement between the

10  parties about some depositions that would be taking place.

11  This was a discussion we had during -- over the holidays with

12  plaintiff's counsel and an agreement a handful of depositions

13  would take place after the discovery cutoff.

14     This has morphed into not only a continuance of the

15  discovery cutoff but the suggestion I'm hearing from

16  plaintiff's counsel is sort of putting a pin in the idea that,

17  well, we're going to have sort of rolling discovery over

18  innumerable potential third-party custodians.

19     I'd point out to the court that by my count there were 22

20  subpoenas from the plaintiffs issued after that call we had

21  with the court.  So even though this case was filed in 2018,

22  and the plaintiffs have very various litigation throughout the

23  country on this subject, they're choosing now to really drill

24  down on this third-party discovery.

25     And so we don't believe it's appropriate for sort of

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

1   this -- we're all agreeing on dates here, but we're not really

2   agreeing to the extent maybe a third party -- third-party

3   discovery needs to kind of continue on.

4       The -- I -- we submit to the court that the appropriate

5   procedure here is if and when the plaintiffs have identified a

6   discrete discovery issue that's brought through the court's

7   protocol to the court's attention, and -- and we can deal with

8   it at that time.

9       I -- I really think the take-away -- what we would like

10  today from the court is a very clear order about what the

11  schedule will -- will be moving forward, and we can address

12  these other issues with this third-party discovery if and when

13  it comes up.

14      And -- and I'll just also identify to the court something

15  that I think is troubling, which is the plaintiffs have

16  repeatedly stated that -- well, accused the defendants of

17  committing crimes.  And this case raises Fifth Amendment

18  issues.

19      And I would be remiss not to raise to the court my concern

20  that we may be getting into an area where the ADSI defendants

21  may file a motion to stay based on *Keating* and related cases.

22  But the idea is --

23          **THE COURT:**  Have they been indicted?

24          **MR. ATKINSON:**  Well, Your Honor, I would ask through

25  the court if -- if it's permitted, I would ask the plaintiffs

1    counsel if the U.S. Attorney's Office has -- has been in touch

2    with the plaintiffs about this case.

3              **THE COURT:**  Well --

4         **MR. NELSON:**  Your Honor, the -- the one thing I will

5    say about this is I understand my ethical duties as a member

6    of the bar.  And I have not once -- not once asserted to the

7    defendants that a crime has been committed.  We're focusing

8    on -- on the civil offense of trafficking in counterfeit

9    products.  That's a civil crime or a civil offense, Your

10   Honor.

11        Now, obviously, I think what counsel is -- is aware of is

12   that many civil offenses also have criminal counterparts.  And

13   in fact, Ms. Little at her deposition asserted the

14   Fifth Amendment, refused to answer questions about the

15   labeling activity that -- that was alleged to have taken place

16   in Fremont.  So there is this overlay in which they are

17   concerned about it.

18        But I -- I do -- I do want to make sure that it's clear on

19   the record that I have -- I have never asserted any kind of

20   criminal proceeding which would, of course, be unethical.

21             **MR. ATKINSON:**  And, Your Honor, respectfully, I don't

22   believe counsel's giving you a direct answer to your question.

23             **THE COURT:**  Well, I didn't really ask.  And you're

24   making reference to cases that I've not read.

25             **MR. ATKINSON:**  Your Honor, it -- it's more -- we will

1    file a motion with the court if -- if we think the court needs

2    to review this.  I do not want to be in a position where the

3    court is asking, well, when we were all here, why didn't

4    counsel even raise this issue.

5        And just for the record, I do not intend to accuse counsel

6    of having committed an -- a violation of the rules of

7    professional conduct.  That's not my intent.  My intent is

8    just to say the allegation of counterfeiting equipment to the

9    U.S. military is serious.  And, I mean, in the spectrum of

10   crimes, that's obviously a very serious crime.  And if

11   plaintiffs have discussed this with the U.S. Attorney's

12   Office, that would be --

13       **THE COURT:**  Does he have an ethical -- he said he

14   hasn't breached an ethical duty.  Does he have an ethical duty

15   to tell you?

16       **MR. ATKINSON:**  To the extent -- the court has posed a

17   question to the defendants, if the defense -- if the

18   defendants have been indicted.  I think -- to my knowledge,

19   no, they have not been indicted, although I think for the

20   court to be fully informed, to the extent the court is trying

21   to weigh the criminal exposure here, to the extent there's a

22   party in front of you who may have information relevant to

23   your question, that's why I raise that question, the question

24   to plaintiff's counsel.

25       **THE COURT:**  If you're counterfeiting -- if a person

1   is counterfeiting, I don't care who it is, right, that action

2   can have criminal and civil penalties.  I mean, I don't know

3   what you want me to say about that.  I don't disagree with

4   what counsel said.  So --

5                    (Pause in the proceedings.)

6           MR. ATKINSON:  So, Your Honor, I'm -- I'm not making

7   a request to the court at this time.  I --

8           THE COURT:  I'm just looking at what the elements are

9   of counterfeiting.  They're pretty basic.

10          MR. NELSON:  Your Honor, Richard Nelson for Cisco.

11      The one additional element in the -- in the crime is proof

12  of knowledge that the defendant or the defendant knew that the

13  products were counterfeit, but I think -- I think basically

14  the rest of the elements are the same.

15          THE COURT:  You have the knowledge.  You have an

16  intent.  You have interstate commerce.  And, obviously, the

17  device itself or the object itself has to be counterfeit.

18      But there are many, many crimes of which the U.S. attorney

19  knows and chooses not to prosecute.  So I don't know what to

20  tell you.

21      You can go to the ABTL dinners and listen to Mr. Anderson

22  and see what he wants to do.  I can tell you he's not filing

23  those.  Got a lot of Tenderloin cases going on.  But --

24          MR. ATKINSON:  Well --

25          THE COURT:  -- I don't know what he's doing.

1        **MR. ATKINSON:**  And, Your Honor, I -- I'm -- again,

2    I'm not making the motion now.  It's my understanding it's --

3    it's a discretionary call to the court based on the interest

4    of justice with various factor considerations.

5        But to the extent we're talking about a trial schedule, I

6    would have been remiss not to raise to the court's attention

7    the possibility we may be filing such a motion and --

8        **THE COURT:**  Well, that's why I never put one trial on

9    my calendar.  I always double and triple set 'cause cases go

10   away.

11       All right.  This is what I'm going to do.  Looking at your

12   dates, that is a month before the nonexpert cutoff.  I will

13   impose that cutoff, and plaintiffs are advised that to the

14   extent you do not have what you need from third parties, you

15   must file motions.  If your motions are filed by the cutoff,

16   then you will be able to follow through.  If they're not

17   filed, cutoff is the cutoff so it may mean you have to file a

18   bunch of motions, or you have to come in here and ask me for

19   very specific relief based upon very specific information.

20       If that exists and it doesn't prejudice other parties or

21   there is a way that I can address any prejudice within the

22   time frame, then I will.  But the cutoff's March 20th.

23       The opening disclosures, April 17th is fine.  A reminder

24   to look at my standing order.  I do require that those reports

25   be -- every paragraph must be numbered, and that is if I get

1    *Daubert* motions or motions to strike, you must tell me

2    specifically which paragraphs you are seeking to have

3    stricken.

4        I don't like trying to guess what it is you all are

5    wanting for purposes of those kinds of motions.  So I order

6    that the reports have to be numbered.

7        In addition, there must be a summary of opinions at the

8    front.  Again, the reason that I do this is because expert

9    reports have lots of information upon which the experts are

10   relying.  There's lots of hearsay that they consider.  But

11   that doesn't necessarily mean that it is their opinion or that

12   they are going to espouse that opinion in court.

13       I want to know what the opinions are.  And that has to be

14   summarized in the front.

15       Rebuttal reports by May 1st is fine.  Expert discovery,

16   May 15th is fine.

17       So you've got two weeks.  How many experts -- you must not

18   have that many experts.

19           MR. NELSON:  Your Honor, we anticipate at least two

20   retained experts.

21           THE COURT:  On your side.

22       How about the other side?

23           MR. ATKINSON:  One or two, Your Honor, probably.

24           THE COURT:  All right.  Well, then that's fine.

25       Looks like you want to file dispositive and *Daubert*

 1  motions by May 29th.  Is that what I understand -- how to read

 2  that?

 3           **MR. NELSON:**  This is Richard Nelson, Your Honor.

 4     Yes, Your Honor.

 5           **THE COURT:**  All right.  So I'll just include the

 6  filing deadline.  Just a reminder, again, read my standing

 7  order.  You must come in and have a discussion with me about

 8  the motions that you want to file.  You're required to do an

 9  executive summary.  The other side needs to respond.  I get

10  you in here quickly.  My May is very busy.  I have very little

11  time, so the sooner you get those things teed up, the better.

12     Also at that conference, we will decide and figure out

13  what the briefing looks like given this many parties.  I try

14  to make things -- if there are cross-motions, then I have one

15  person start so you're not talking -- or you're not filing --

16  speaking over each other.

17     I also require separate statements.  Given this kind of

18  case, links would probably be appropriate from the evidence

19  into the statements.  Sometimes I just read the statements.

20  Why?  Because hypobole, which lawyers tend to like to use, is

21  entirely unconvincing to me.  I ignore it.  In fact, if

22  there's too much of it, it annoys me.

23     I don't like hyperbole.  Pretty matter of fact.  We've got

24  elements.  We have facts.  I want to look at the facts.  A lot

25  of times I go and I look at the documents, I look at the depos

1      before I ever look at your briefs.

2          So keep the hyperbole out.  It just -- it's just not

3      persuasive.  I guess for other judges, it is because lawyers

4      do it so often.  I'm just telling you it's not persuasive to

5      me.

6          Okay.  So I'm assuming, given how many people and parties

7      I have -- who thinks they're going to file a dispositive

8      motion?  Anybody?

9              MR. KIRKE:  Your Honor, John Kirke for the

10     third-party defendants, we do --

11             THE COURT:  Okay.

12         Are --

13             MR. NELSON:  Your Honor, Richard Nelson for the

14     plaintiffs.  We haven't made that decision, Your Honor.  I --

15             THE COURT:  Okay.

16             MR. NELSON:  I -- I'm leaning against it.

17             THE COURT:  Well, I can tell you from your

18     perspective, the last time I had a plaintiff in here with this

19     kind of case, it was shocking to me that the party thought

20     that I would give them millions and millions of dollars when

21     they hadn't traced any of the counterfeit products to their

22     damages.  And somehow they think they can do that without an

23     expert.

24         So there -- there's a lot of work, at least on the

25     plaintiff's side.  And the question about whether or not there

1   are material disputes of fact, I don't know.  I just don't

2   know what the evidence looks like.

3       All right.  What about other third-party defendants?

4           MR. ATKINSON:  We haven't decided, Your Honor.  I

5   apologize.

6       I believe all of the third -- all of the defendants

7   have -- are undecided.

8                   (Pause in the proceedings.)

9           THE COURT:  How many different counts do you have?

10          MR. NELSON:  One second, Your Honor.

11      There's five, Your Honor.

12      This is Richard Nelson on behalf of the plaintiffs.

13          THE COURT:  Okay.  I can do this trial November 2nd.

14  With a November 2nd trial date, your pretrial conference is

15  October 9th.  That means your pretrial statements are due

16  September 25th.

17      You'll be placed on a compliance calendar for September

18  18th.  By September 11th, you will need to file a joint

19  statement that says, I've -- you've looked at my standing

20  order.  Everybody is complying with the standing order and

21  there are no issues.

22      If there are issues, that's when I want to know.  I don't

23  want to know a month later when you are all in here.

24          MR. ATKINSON:  And, Your Honor, I apologize.  Is that

25  the purpose of the -- I don't -- I don't recall a compliance

1    calendar.  That's the compliance calendar, is to see if we're

2    in compliance with the court's --

3          THE COURT:  So -- so I have -- I have over 300 cases.

4    In order to make sure that lawyers are doing what I tell them

5    to do, I have a Friday compliance calendar at 9:01 a.m.  I

6    don't ever expect to see anyone here.  It is just a mechanism,

7    a tool, that requires you to file something five days prior to

8    make sure that you're doing what I told you to do.

9          MR. ATKINSON:  Great.

10         THE COURT:  As long as you file that, then I take it

11   off calendar.  If you don't file it, then you usually get an

12   order to show cause why I shouldn't sanction you.  But I don't

13   ever expect to see you in the courtroom.  So --

14       And that's actually -- it should have been laid out --

15   yeah, it was -- laid out in the pretrial order that you

16   received what that means, Docket 37.  And that will be

17   repeated again.

18       Okay.  Any questions?

19         MR. NELSON:  Your Honor, only -- Richard Nelson for

20   the plaintiffs.

21       With regard to the discovery cutoff, I understand and

22   accept the discovery cutoff the court has set.  We do have --

23   in order to get the third-party discovery out and responses

24   back, we -- we do -- we'll need to address with the

25   defendants, the ADSI defendants, the Rule 26 supplemental

1   production.  I don't want to argue that now.  I think

2   that's -- that would be prejudicial for them.  And I know the

3   court has a joint letter briefing schedule.

4       So I was just inquiring whether if -- if the parties got

5   the joint letter brief to you next week --

6           **THE COURT:**  I am in four back-to-back trials.  You

7   all better figure out your discovery issues.

8       You can get it to me.  I can tell you that frequently, I

9   may put you on the phone.  I may issue an order that says,

10  "just do this," without much explanation because, frankly, I

11  don't have a lot of time for explanation on discovery

12  disputes.

13      You're all seasoned litigators.  You all better be

14  reasonable.  And you better not want to be in my courtroom

15  while I'm trying cases, which, by the way, this spring, that's

16  all I'm doing.

17      So absolutely get it to me.  I will respond.  I will not

18  be happy.

19          **MR. NELSON:**  We -- If --

20          **THE COURT:**  Letting you.

21          **MR. NELSON:**  And Richard Nelson for the plaintiffs.

22      Just to be -- just to be clear on this point, we've had

23  very good dialogues with defense counsel, all defense counsel,

24  and so there's been a lot of coop- -- cooperation amongst

25  counsel, so I'm expecting that we'd be able to resolve this as

1    well, Your Honor.

2              THE COURT:  And I say these kinds of things in this

3    kind of tone so that you don't come back.

4              MR. NELSON:  We'll try not to, Your Honor.

5              THE COURT:  You know, if you have to, you have to.

6    But --

7         I will say, you know, it is my experience that

8    sometimes -- and this is the reason why I do what I do, a lot

9    of times, the discovery issues are left to the junior people.

10   And the junior people, you know, are trying to prove their

11   chops, and they're trying in a litigation context to be tough.

12   So they're overly tough.  They have no clue how to try a case.

13   They have no clue what's important versus what's not

14   important.

15        So I have to deal with the discovery dispute, I generally

16   require lead counsel to show up, because if I'm going to spend

17   time on it, you're going to spend time on it.  And frequently,

18   when I get these kind of -- you know, when I get discovery

19   disputes, the junior people have all, you know, argued about

20   stuff, and then I order the senior people to show up, and then

21   the senior people get involved and it gets resolved.

22        So I'm just suggesting you do that on the front end and

23   save me a step and save you all an appearance.

24        I tend not the use the magistrate judges if I can avoid it

25   because they're not trying this case.  And good or bad, you

1    tend to be a little bit more nervous about making me upset

2    than you do the magistrate judges, and that just is, you know,

3    human nature.  I get it.  So I don't tend to do that.

4        And I'm trying to keep you on schedule, so -- but yes, do

5    the letter brief.

6            MR. NELSON:  We'll -- we'll try to avoid that, Your

7    Honor.

8            THE COURT:  Perfect.

9        Anything else you want to discuss?

10           MR. NELSON:  Not from plaintiffs, Your Honor.

11           MR. ATKINSON:  No, Your Honor.

12       Thank you for your time.

13           THE COURT:  All right.  Good luck.

14           MR. NELSON:  Thank you, Your Honor.

15           MR. KIRKE:  Thank you, Your Honor.

16           THE COURT:  Thank you.

17           (Proceedings were concluded at 2:43 P.M.)

18                         --o0o--

19

20

21

22

23

24

25

1

2                          **CERTIFICATE OF REPORTER**

3

4           I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6    I further certify that I am neither counsel for, related to,

7    nor employed by any of the parties to the action in which this

8    hearing was taken, and further that I am not financially nor

9    otherwise interested in the outcome of the action.

10

11    _____

12           Raynee H. Mercado, CSR, RMR, CRR, FCRR, CCRR

13                      Friday, March 13, 2020

14

15

16

17

18

19

20

21

22

23

24

25