RICHARD J. NELSON (State Bar No. 141658)
E-Mail: rnelson@sideman.com
IAN K. BOYD (State Bar No. 191434)
E-Mail: iboyd@sideman.com
ANGELA M. HE (State Bar No. 319351)
E-Mail: ahe@sideman.com
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
San Francisco, California 94111-3711
Telephone: (415) 392-1960
Facsimile: (415) 392-0827

Attorneys for Plaintiff
Cisco Systems, Inc. and Cisco Technology, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC., a California corporation, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>ZAHID "DONNY" HASSAN SHEIKH, an individual, et al.,<br><br>　　　　　Defendants. | Case No. 4:18-cv-07602 YGR<br><br>**DECLARATION OF GREG REGAN IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY/REPORTS OF DR. DANIEL LEVY AND GREG REGAN**<br><br>Judge: Honorable Yvonne Gonzalez Rogers<br>Date: July 31, 2020<br>Time: 2:00 p.m.<br>Crtrm.: 1, 4th Floor |
| ADVANCED DIGITAL SOLUTIONS INTERNATIONAL, INC., a California corporation,<br><br>　　　　　Third-Party Plaintiff,<br><br>　　v.<br><br>RAHI SYSTEMS, INC., a California corporation, et al.,<br><br>　　　　　Third-Party Defendants. | |

2835-211\4428062v1

Case No. 4:18-cv-07602 YGR

DECLARATION OF GREG REGAN IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY/REPORTS OF DR. DANIEL LEVY AND GREG REGAN

I, GREG REGAN, hereby declare as follows:

1. I am a Partner in the Forensic and Financial Consulting Services Group of Hemming Morse, LLP, and have been retained by counsel for Cisco Systems, Inc. as an expert witness in the above-captioned case. I have personal knowledge of the facts set forth herein, or I am informed and believe that they are true. If called as a witness, I could and would testify competently as to these facts.

2. I issued an expert report in this matter dated April 17, 2020 in which I set forth my qualifications and compensation ("Regan Report").

3. I understand that Defendants contend that my lost profits calculation assumes that every infringing sale would have gone to Plaintiffs but for Defendants' counterfeiting activities (i.e. that I applied a 1:1 ratio for such sales). This claim is incorrect.

4. While in my opinion there are several factors present in this case which favor a determination that Cisco's customer base evidences relatively inelastic demand, I do not make a 1:1 analysis for purpose of computing my lost profits determination and I did not assume perfectly inelastic demand.

5. Based on the records provided by Defendants as of my April 17, 2020 Expert Report, Defendants had total sales of Cisco products during the relevant period of ▓▓▓▓▓ [Regan Report, Schedule 10a]. Of this amount, as I testified at deposition, I did not include Defendants' sales of Cisco products that were not matched to Cisco's GLP, because these sales did not reliably reflect Cisco's Product Identification Number.

6. To cite just one example, I did not calculate lost profits corresponding to the sale of 8 units to the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in November 2017. (*see* ADSI00336 for Invoice No. 1106624.) Defendants' data identifies the product sold only as "CISCO-WS-C3850-." (*Id.*) Cisco has dozens of products with a similar prefix (*e.g.*, WS-C3850-12S-S, WS-C3850-24S-S, WS-C3850-24P-S, and WS-C3850-48P-S) and each PID has a different price. Consequently, Defendants' records did not allow me to estimate a comparable product and price for a but-for transaction.

7.   As stated on Schedule 10c of my report, the total amount of "Cisco" products sold by Defendants that I did not have enough information to include in my analysis was ▮▮▮▮.

8.   There is another tranche of Defendants' applicable sales that are not included in my lost profits calculation. As I testified, I relied on Defendants' production of electronic sales data to calculate lost profits. (*see* Regan Report Schedule 2c, 3c, 4c, 5c, 6c referencing ADSI00334-337, KFA00002-006.) The electronic data summarized approximately 3,300 invoices. In my report, I observed indications that the electronic data may be incomplete. (Regan Report ¶ 26.) I also testified about evidence that Defendants' sales records were incomplete at my deposition. (Regan Tr. 84:11-85:14.).

9.   Reading Mr. Love's deposition caused me to realize there are significant discrepancies between ADSI's electronic sales records and the hard copies of its sales records. Mr. Love was a government witness deposed on April 15, 2020. Consequently, I did not receive the exhibits to Mr. Love's deposition until after the issuance of my expert report on April 17, 2020.

10.   I then obtained hard copies of approximately 1,200 invoices and purchase orders related to Defendants' sales transactions. (ADSI00340 to ADSI01518.). The hard copy invoices produced by ADSI are a subset of all invoices (*i.e.*, there are approximately 3,300 invoices reported in the electronic data but less than 1,200 hard copy invoices were produced).

11.   I compared these hard copy documents to Defendants' electronic sales data. Based on that review, I identified numerous sales records omitted from Defendants' electronic data. There were many transactions evidenced in the hard copies of these invoices that were not included in Defendants' electronic sales data.

12.   Upon identifying this issue, I also reviewed available documentation related to GSA orders. In doing so, I found further information concerning missing transactions in Defendants' electronic data. For example, ADSI obtained a ▮▮▮ order in June 2015 for ▮▮▮ (Sheik Ex. 83.) This order included seven Cisco 3750X-24 switches for ▮▮▮. ADSI's electronic data does not reflect the sale of this PID to a ▮▮▮▮▮ at any time.

13.   For another example of where the hard copies of Defendants' records did not align with their electronic data, Defendants' electronic sales data omitted more than ▮▮▮ of sales to

DECLARATION OF GREG REGAN IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY/REPORTS OF DR. DANIEL LEVY AND GREG REGAN

1   ▆▆▆ on Invoice No. 1097109. This amount may be determined by comparing ADSI01339 (the

2   hard copy invoice) to ADSI00336 (the electronic data).

3       14.    Similarly, ADSI did not produce a hard copy of Invoice No. 1111977 related to a

4   ▆▆▆ sale in September 2018. ADSI's electronic data reported that this transaction included only

5   two Cisco WS-C3850-12S-S switches. The related ▆▆▆ contract for $▆▆▆, however, included

6   orders for numerous other Cisco products, including ten GLC-SX-MMD= transceivers. (Love Ex.

7   3 at CISCO00002797.) ADSI's electronic data does not identify the sale of any transceivers to the

8   ▆▆▆ with this PID, or any other similar PID, at any time from August 2018 through at least

9   December 2018. In other words, this is further confirmation that ADSI's electronic sales data is

10  missing the sale of relevant "Cisco" products.

11      15.    I estimate that Defendants' electronic records fail to report <u>at least</u> $▆▆▆ of

12  sales of "Cisco" products. I state "at least" this amount because this analysis is based on hard

13  copies referencing just over 1100 transactions while Defendants' electronic sales data references

14  just under 3300 transactions. I am confident that if Defendants had actually produced all of the

15  hard copies created by them in the normal course of their business that these missing transactions

16  would confirm a figure substantially higher than ▆▆▆. I have summarized these missing

17  transactions in the attached Schedule 1.

18      16.    The $▆▆▆ sales figure stated in Schedule 10a of my report does not take into

19  account these sales of approximately ▆▆▆ because Defendants did not include these sales in

20  their electronic sales data.

21      17.    Adding the ▆▆▆ omitted for the reasons noted above, coupled with at least

22  ▆▆▆ in these subsequently discovered sales, results in a minimum amount of ▆▆▆ that

23  is not included in my analysis. Accordingly, <u>at least</u> 18.3% of Defendants' sales are not addressed

24  in my lost profits calculations.

25      18.    The impact of not using all of Defendants' sales of "Cisco" products to estimate

26  lost profits is equivalent to an assumption that Cisco would not have obtained each of the sales

27  made by Defendants in the but-for analysis. Ultimately, because there is over $▆▆▆ of

28  Defendants' sales of these products not included in my lost profits analysis, it is factually incorrect

for Defendants to assert that my calculations are anywhere close to being based on 100% of Defendants' relevant sales.

19. As a CPA certified in forensic accounting and fraud examination, I applied my expertise in assessing the likelihood that 100% of the transceivers not obtained from ▇▇▇ or ▇▇▇ were non-genuine. In making this determination, I took into account my understanding that U.S. Customs had repeatedly seized Defendants' transceivers such as these (Regan Report ¶¶ 35, 59), that every transceiver that Cisco tested (in excess of 60) was determined to be counterfeit (Regan Tr. 145:14-146:7), that significant evidence indicated the Defendants procured the products from unauthorized manufacturers in China and Hong Kong (Regan Report ¶¶ 40-43, 56-58), that Nadia Uddin (a former employee of ADSI) testified that she had observed Defendants applying "Cisco" labels to counterfeit transceivers (Regan Report ¶ 52), that Defendants utilized UPS boxes in Reno (Regan Report ¶¶ 47-51) until U.S. Customs seized counterfeit transceivers intended for that location (before Defendants then arranged for a UPS box in Portland, far away from their Fremont facility, without testifying as to any legitimate business justification for doing so) and that the Defendants did not produce data such as product serial numbers or the names of vendors supplying the products, which was information maintained by the Defendants in the normal course (Regan Report ¶¶ 46, 53-55).

20. Although my lost profits calculation does not assume that demand for Cisco's products is inelastic, there are several factors arising from the evidence in this case favoring an opinion that Cisco's customers are willing to pay a higher price to obtain a genuine Cisco product (e.g. increased security risk, the benefits of Cisco support and service, and because many customers already own a Cisco embedded network along with personnel with Cisco-specific expertise). Moreover, I confirmed that the median total invoice amount of Defendants' sales of Cisco-branded products was less than ▇▇▇ indicating that these customers bought these products to supplement an existing Cisco network and that Cisco would not deviate from its discounting practices for sales of this amount. Importantly, approximately 62% of Defendant ADSI's sales of suspect products were to ▇▇▇▇▇▇ which were sales made pursuant to ▇▇▇▇▇▇ specifying that Cisco products be procured. Many of the Defendants' other

2835-211\4428062v1     4     Case No. 4:18-cv-07602 YGR

DECLARATION OF GREG REGAN IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY/REPORTS OF DR. DANIEL LEVY AND GREG REGAN

1 sales were to other governmental entities such as ▉▉▉▉ or to corporate entities such as ▉▉▉▉ In
2 my opinion, all of this evidence supports the contention that such sales would have likely gone to
3 Cisco but for Defendants' counterfeit scheme, although as noted above, my lost profits calculation
4 applies a much more conservative approach.

5  I declare under penalty of perjury under the laws of the United States of America that the
6 foregoing is true and correct.

7  Executed June 12, 2020 in Burlingame, California.

_____
Greg Regan

**Declaration of Greg J. Regan, CPA/CFF, CFE**
**Schedule 1 - Invoice Data Missing from Defendants' Electronic Sales Data**

| Bates | Invoice # | Customer/ Bill To | Date | PID (Item Number) | Quantity Required | Unit Price/Cost | Total Sale |
|---|---|---|---|---|---|---|---|
| ADSI01227 | 1094059 | | 10/24/2016 | EHWIC1GESFPCU | 4 | | |
| ADSI01230 | 1094323 | | 11/01/2016 | EHWIC1GESFPCU | 4 | | |
| ADSI00369 | 1072857 | | 02/04/2015 | WS-C2960X-48LPD | 2 | | |
| ADSI01040 | 1089795 | | 06/29/2016 | CON-SNT-WSC4900 | 1 | | |
| ADSI01040 | 1089795 | | 06/29/2016 | CVR-X2-SFP | 4 | | |
| ADSI00408 | 1073974 | | 04/13/2015 | WS-C2960X-48LPD | 4 | | |
| ADSI01157 | 1092003 | | 08/31/2016 | WS-C3750X-24S-S | 1 | | |
| ADSI00505 | 1078604 | | 08/12/2015 | WS-C3750X-24PS | 1 | | |
| ADSI00550 | 1079103 | | 08/27/2015 | WS-C3750X-48PS | 4 | | |
| ADSI00545 | 1079002 | | 08/24/2015 | C3KX-NM-10G= | 7 | | |
| ADSI00545 | 1079002 | | 08/24/2015 | CON-SNT-3750X2P | 7 | | |
| ADSI00545 | 1079002 | | 08/24/2015 | WS-C3750X-24P-L | 7 | | |
| ADSI00875 | 1085675 | | 02/26/2016 | CAB-16AWG-AC | 2 | | |
| ADSI00875 | 1085675 | | 02/26/2016 | WS-C2960X-48FPD | 2 | | |
| ADSI00921 | 1086520 | | 03/23/2016 | CON-SNTP-C3755S | 1 | | |
| ADSI00921 | 1086520 | | 03/23/2016 | WS-C3750X-12S-E | 1 | | |
| ADSI01160 | 1092007 | | 08/31/2016 | ASA5545-FPWR-K9 | 2 | | |
| ADSI01160 | 1092007 | | 08/31/2016 | CON-SNT-A45FPK9 | 2 | | |
| ADSI01160 | 1092007 | | 08/31/2016 | PWR-C2-250WAC | 1 | | |
| ADSI01204 | 1092820 | | 09/22/2016 | CP7811-K9 | 70 | | |
| ADSI01205 | 1093374 | | 10/04/2016 | PWR-C1-1100WAC/ | 9 | | |
| ADSI01265 | 1094134 | | 10/26/2016 | 3560CX-12PC-S | 5 | | |
| ADSI01265 | 1094134 | | 10/26/2016 | AIR-CT5508FIPSK | 2 | | |
| ADSI01265 | 1094134 | | 10/26/2016 | AIRLAP-FIPSKIT= | 67 | | |
| ADSI01265 | 1094134 | | 10/26/2016 | L-LIC-CT5508-50 | 1 | | |
| ADSI01275 | 1094153 | | 10/27/2016 | WS-C2960X-48FPD | 1 | | |
| ADSI01289 | 1094186 | | 10/27/2016 | WS-C2960X-48FPD | 4 | | |
| ADSI01300 | 1094372 | | 11/03/2016 | CON-SNT-64TQ10G | 1 | | |
| ADSI01339 | 1097109 | | 02/14/2017 | C3850-NM-4-1G | 20 | | |
| ADSI01339 | 1097109 | | 02/14/2017 | CON-SNT-3850X4F | 20 | | |
| ADSI01339 | 1097109 | | 02/14/2017 | CON-SNT-WS-C354 | 10 | | |
| ADSI01339 | 1097109 | | 02/14/2017 | CON-SNT-WS-C354 | 10 | | |
| ADSI01339 | 1097109 | | 02/14/2017 | GLC-SX-MMD | 40 | | |
| ADSI01339 | 1097109 | | 02/14/2017 | PWR-C1-1100WAC | 20 | | |
| ADSI01339 | 1097109 | | 02/14/2017 | WS-C3850-24P-S | 10 | | |
| ADSI01453 | 1108094 | | 01/16/2018 | ISR4331-V/K9 | 1 | | |
| ADSI01463 | 1108760 | | 02/16/2018 | CON-SNTP-WSC385 | 2 | | |
| ADSI01463 | 1108760 | | 02/16/2018 | GLC-SX-MMD= | 50 | | |
| ADSI01499 | 1112287 | | 10/18/2018 | SFP10GLR | 60 | | |
| ADSI01390 | 1102523 | | 07/31/2017 | CAB-SPWR-30CM | 1 | | |
| ADSI01390 | 1102523 | | 07/31/2017 | CAB-TA-NA | 2 | | |
| ADSI01390 | 1102523 | | 07/31/2017 | GLC-SX-MMD= | 5 | | |
| ADSI01390 | 1102523 | | 07/31/2017 | PWR-C1-350WAC | 1 | | |
| ADSI01390 | 1102523 | | 07/31/2017 | PWR-C1-350WAC/2 | 1 | | |
| ADSI01390 | 1102523 | | 07/31/2017 | STACK-T1-50CM | 1 | | |
| ADSI00465 | 1077976 | | 07/28/2015 | X2-10GB-LRM | 145 | | |
| ADSI00617 | 1080344 | | 09/29/2015 | X2-10GB-LRM | 52 | | |
| ADSI00734 | 1082924 | | 11/25/2015 | C4500X-IP-ES | 1 | | |
| ADSI00734 | 1082924 | | 11/25/2015 | C4KX-NM-8SFP+ | 1 | | |
| ADSI00734 | 1082924 | | 11/25/2015 | C4KX-PWR-750ACR | 1 | | |
| ADSI00734 | 1082924 | | 11/25/2015 | C4KX-PWR-750ACR | 1 | | |
| ADSI00734 | 1082924 | | 11/25/2015 | CAB-US515-C15-U | 2 | | |
| ADSI00783 | 1084559 | | 11/03/2015 | C4KX-PWR-750ACR | 8 | | |
| ADSI00783 | 1084559 | | 11/03/2015 | SFP-10G-LR | 30 | | |
| ADSI01250 | 1094061 | | 10/24/2016 | WS-C3750X-48T-S | 1 | | |
| ADSI01262 | 1094128 | | 10/26/2016 | WS-C2960X-48FPD | 1 | | |
| ADSI01264 | 1094131 | | 10/26/2016 | AIR-CT5508FIPSK | 2 | | |
| ADSI01264 | 1094131 | | 10/26/2016 | L-LIC-CT5508-50 | 1 | | |
| | | | | | | Subtotal | |
| | | | | | | Total | |