**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CISCO SYSTEMS, INC., ET AL.,**<br><br>  Plaintiffs,<br><br>  vs.<br><br>**SHAHID H. SHEIKH, ET AL.,**<br><br>  Defendants. | Case No.  4:18-cv-07602-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART THIRD PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| **ADVANCED DIGITAL SOLUTIONS INTERNATIONAL, INC.,**<br><br>  Third- Party Plaintiff,<br><br>  vs.<br><br>**RAHI SYSTEMS, INC., ET AL.,**<br><br>  Third-Party Defendants. | Re: Dkt. No. 130 |

Plaintiffs Cisco Systems, Inc. and Cisco Technology, Inc. (collectively "Cisco") bring this action against defendants Shahid H. Sheikh, Kamran Sheikh, Farhaad Sheikh,[1] Advanced Digital Solutions International, Inc. ("ADSI"), Purefuturetech, LLC, Jessica Little, K&F Associates, LLC, and Imran Husain[2] for claims based on trademark infringement, trademark counterfeiting, false designation of origin, violation of California's Unfair Competition Law, and unjust enrichment. ADSI, as a third-party plaintiff, brings a claim for indemnity against third-party defendants Rahi Systems, Inc., Masood Minhas, Nauman Karamat, Pure Future Technology, Inc. ("PFT"), Nabia Uddin, Karoline Banzon, and Kaelyn Nguyen ("3rdPD" or collectively "3rdPDs").

Now before the Court is the 3rdPDs' motion for summary judgment. (Dkt. No. 130; Dkt. No. 131-15 (Unredacted).) ADSI opposes the motion. (Dkt. No. 136.) The matter is fully

---

[1] Because multiple defendants have the "Sheikh" surname, the Court utilizes the first names of these defendants when referring to each of these individual defendants.

[2] The Court defines "ADSI parties" or "ADSI affiliated defendants" to include ADSI, Shahid, Kamran, Farhaad, Prefuturetech, LLC, and K&F Associates, LLC.

briefed. (*See also* Dkt. No. 143.) Having carefully reviewed the pleadings, the papers submitted on each motion, the parties' oral arguments at the hearing held on August 7, 2020, and for the reasons set forth more fully below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion for summary judgment.

**I.  BACKGROUND[3]**

The dispute in this litigation concerns the purported infringement and counterfeiting by defendants ADSI, Shahid, Kamran, Farhaad, Purefuturetech Inc., K&F Associates, Little, and Hussein of plaintiff Cisco's electronic products. In sum, Cisco alleges a scheme by the defendants to market and sell counterfeit goods by infringing on the Cisco trademark. As reflected in the record and the docket, the counterfeit scheme included a series of shell companies with various post office boxes established in the name of these entities to receive counterfeit goods. The third-party complaint alleges that the owners of ADSI, Shahid and Roya Sadaghiani, were effectively absent owners who did not manage the day-to-day operations of ADSI, and left the 3rdPDs in total control of ADSI.

Third-party plaintiff ADSI seeks indemnification from 3rdPDs Minhas, Karamat, Rahi Systems, PFT, Uddin, Banzon, and Nguyen for any liability that is established by Cisco based on this scheme. Of the individual 3rdPDs: Minhas, Karamat, and Banzon were salespersons;[4] Uddin was a buyer; and Nguyen was the sales team's administrative assistant. These employees either quit or were fired in and around September 2017 and now currently work for Rahi Systems. In

---

[3] In connection with the briefing on the motion for summary judgment, the parties have filed several administrative motions to file accompanying exhibits under seal. (Dkt. Nos. 131, 135, 144.) The administrative motions to seal at Docket Numbers 131 and 135 are **DENIED** on the bases proffered. *See* N.D. Cal. L.R. 79-5(e). The mere designation of materials as confidential under a protective order is insufficient to satisfy a request to seal. With regard to the administrative motion to seal at Docket Number 144, that motion is **DENIED** for the same reasons *except* those documents relating to Fifth Amendment issues, which include deposition transcripts at Docket Number 144-6, and the facts identified in the Separate Statement at Fact 15, 40, 41, 42, and 43. The Court **RESERVES** judgment on whether this material should be sealed, and intends to address this issue when dealing with the related motions in limine.

[4] The Court notes that the record reflects that Minhas and Karamat had supervisory roles in the sales department at ADSI. It is not entirely clear from the record whether Minhas or Karamat was the ultimate supervisor of the department. Such an ambiguity does not impact the Court's analysis.

short, ADSI alleges and contends that Karamat, in connection with the other 3rdPDs, was responsible for the illegal product sourcing of Cisco products, and that the 3rdPDs set up a scheme to divert sales to Rahi Systems, and further sent commissions to PFT.[5]

## II. LEGAL STANDARD

Summary judgment is appropriate when no genuine dispute as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings, depositions, discovery responses, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine issue* of *material fact*." *Id*. at 247–48 (dispute as to a material fact is "genuine" if sufficient evidence exists for a reasonable jury to return a verdict for the non-moving party) (emphases in original).

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the opposing party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that the opposing party lacks evidence to support its case. *Id*. If the moving party meets its initial burden, the opposing party must then set out "specific facts" showing a genuine issue for trial in order to defeat the motion. *Id*. (quoting *Anderson*, 477 U.S. at 250). The

---

[5] The Court further notes that the ADSI parties have also sued the 3rdPDS in Alameda County Superior Court, currently before Judge Jeffrey Brand. (*See* Dkt. No. 135-8 at 4-23.) In the state court action, ADSI is suing the 3rdPD for their actions in diverting business away from ADSI to Rahi Systems while they were still employed at ADSI. These claims include various contractual and tort claims, including: unfair business practices, breach of the duty of loyalty, aiding and abetting, intentional interference with contractual relations and prospective economic relations, violation of penal code section 502, trade secret misappropriation, and breach of contract.

1  opposing party's evidence must be more than "merely colorable" and must be "significantly
2  probative." *Anderson*, 477 U.S. at 249–50. Further, that party may not rest upon mere allegations
3  or denials of the adverse party's evidence, but instead must produce admissible evidence that
4  shows a genuine issue of material fact exists for trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz*
5  *Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000); *Nelson v. Pima Cmty. College*, 83 F.3d 1075,
6  1081–82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute"); *Arpin*
7  *v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) ("conclusory allegations
8  unsupported by factual data are insufficient to defeat [defendants'] summary judgment motion").

9  When deciding a summary judgment motion, a court must view the evidence in the light
10 most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson*,
11 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011). However, in
12 determining whether to grant or deny summary judgment, a court need not "scour the record in
13 search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996)
14 (internal quotations and citation omitted). Rather, a court is entitled to "rely on the nonmoving
15 party to identify with reasonable particularity the evidence that precludes summary judgment." *See*
16 *id*. (internal quotations and citation omitted); *Carmen v. San Francisco Unified Sch. Dist.*, 237
17 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence
18 establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with
19 adequate references so that it could conveniently be found."). Ultimately, "[w]here the record
20 taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no
21 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,
22 587 (1986) (citation omitted).

23 **III.   ANALYSIS**

24 Here, the 3rdPDs aver that summary judgment is appropriate because (1) an adverse
25 inference can be drawn based on defendants' assertion of the Fifth Amendment, and (2) no
26 evidence in the record exists to support the indemnity claim brought against the 3rdPDs. As an
27 initial matter, the 3rdPDs further raise evidentiary objections to ADSI's supporting materials. The
28 Court first addresses the evidentiary objections before discussing the substantive arguments.

4

**A.     Evidentiary Objections**

The 3rdPDs raise two evidentiary objections: (1) the deposition testimony of Shahid, where he recounts a conversation with Little, who is reporting on a conversation she had with Uddin, is inadmissible hearsay; and (2) a declaration filed by Shahid with the opposition briefing should be stricken as Shahid invoked his Fifth Amendment rights in this litigation.  Each is addressed:

*1.     Hearsay Objection Based on Shahid Sheikh Deposition Testimony*

The 3rdPDs object to deposition testimony of Shahid's retelling of a conversation he had with Little who is in turn recounting her conversation with Uddin.[6]  ADSI counters that Shahid's testimony is admissible because (1) Uddin's alleged statements are "opposing party statements;" and (2) Little's statements are not offered for the truth, but to show that "Shahid had no knowledge" of "Uddin Networks" or the use of the Reno post office box.

ADSI does not persuade.  Where statements constitute "double hearsay," each part of the statement must be subject to a hearsay exception to be admissible.  Fed. R. Evid. 805.  Even if Uddin's statements qualified as "opposing party statements," statements by Little, who is a defendant aligned with ADSI, do not.  Further, *Alt-Pac. Const. Co. Inc. v. NLRB*, 52 F. 3d 260, 263 (9th Cir. 1995), which ADSI cites for the proposition that the statements should be admitted because they show the "context within which the parties were acting" is inapposite.  As the 3rdPDs point out, *Alt-Pac. Const.* involved an employee who was terminated after writing a letter and collecting signatures of other employees protesting a co-worker's promotion.  The Court ruled that statements of other employees were admissible because they demonstrated an intent to protest working conditions, a protected activity under the National Labor Relations Act.  *Id.* at 263-264.  Alleged statements by Uddin and Little, however reflect nothing about Shahid's state of mind, nor does Shahid's rendition of Little's statements establish what *Shadid knew or did not know*.  Even

---

[6] ADSI also identifies in its opposition Shahid's testimony where he recalls a direct conversation with Uddin as testimony to which the 3rdPDs may object.  ADSI contends this testimony is admissible as an opposing party statement.  *See* Fed. R. Evid. 801(d)(2).  The 3rdPDs do not argue against the admissibility of this testimony in their reply, and the Court otherwise finds this testimony to be admissible.

5

if the statements were true, at best, they merely establish what Little knew at the time of making the statement.

Thus, the Court **STRIKES** these comments concerning Uddin's alleged statements to Little as inadmissible hearsay.

### 2. *Declaration from Shahid Sheikh.*

In support of ADSI's opposition, Shahid submitted a declaration. (*See* Dkt. No.136-3.) In this declaration, Shahid expands upon his knowledge of the operations of ADSI, as well as knowledge (or lack thereof) of the counterfeit products and alleged scheme. The 3PDs request that the Court strike the Shahid declaration because it impermissibly exploits the Fifth Amendment by turning the declaration into a "sword" against 3rdPDs.

In general, "the Fifth Amendment privilege cannot be invoked to oppose discovery and then tossed aside to support a party's assertions." *S.E.C. v. Zimmerman*, 854 F. Supp. 896, 899 (N.D. Ga. 1993). Further, a party is not entitled to offer new or additional testimony on matters to which they assert the Fifth Amendment, lest as warned in *United States v. Rylander*, 460 U.S. 752, 758 (1983), the privilege against self-incrimination be impermissibly transformed into a sword. *See United States v. $133,420.00 in US Currency,* 672 F.3d 629, 641 (9th Cir. 2012); *Perry v. Bloomberg*, No. 1:15-CV-00408-CL, 2016 WL 247565, at *4 (D. Or. Jan. 20, 2016).

Having asserted the Fifth Amendment rather than provide complete evidence, the ADSI affiliated defendants are not entitled to a second bite at the apple that would allow it to present selectively evidence it believes is favorable. *U.S. v. $133,420.00 in U.S. Currency,* 672 F. 3d at 641-642 (court properly struck favorable interrogatory responses given by defendant who subsequently asserted the Fifth Amendment in response to cross-examination); *Nationwide Life Ins. Co. v. Richards,* 541 F.3d 903, 915 (9th Cir. 2008) (affirming lower court's refusal to allow witness who invoked Fifth Amendment at deposition to testify on the same subject at trial); *In re: Edmond*, 934 F. 2d 1304, 1308-1309 (4th Cir. 1991) (court correctly refused to consider declaration offered by defendant in support of motion for summary judgment after defendant invoked the Fifth Amendment at deposition); *United States v. Parcels of Land,* 903 F.2d 36, 43 (1st Cir. 1990) (court properly struck defendant's affidavit submitted in opposition to a summary

1  judgment motion after defendant refused to answer deposition questions on Fifth Amendment
2  grounds).
3     Here, Shahid's declaration impermissibly exploits the Fifth Amendment. ADSI and its affiliated defendants cannot conceal materials unfavorable to its position under the Fifth Amendment while selectively releasing droplets of materials that support its position. Selectively leveraging the Fifth Amendment in this way impugns the integrity of the Court. *See U.S. v. $133,420.00 in U.S. Currency*, 672 F.3d at 642 ("Indeed, [party's] claim of [the Fifth Amendment] privilege here raises the core concern that his testimony may 'furnish one side with what may be false evidence and deprive the other of any means of detecting the imposition.' . . . . Because [party's] testimony regarding his ownership was central to the issue before the court, and because his refusal to respond to the [opposing party's] questions threatened to 'mutilate the truth a party offers to tell,' . . . the district court did not abuse its discretion by striking [party's] response to Interrogatory No. 2.").

     Accordingly, the Court **STRIKES** this declaration from the docket.

**B.    Adverse Inference Based on Defendants' Assertion of the Fifth Amendment**

     As background, the 3rdPDs seek dismissal in part because defendants and third-party plaintiff ADSI have purportedly stonewalled the 3rdPDs discovery through their use of the Fifth Amendment privilege against self-incrimination. As reflected in the record, the 3rdPDs requested throughout the discovery process material, evidence, and witnesses to support ADSI's claim that the 3rdPDs were responsible for the conduct alleged in the Cisco complaint, but were met with the assertion of the Fifth Amendment right against self-incrimination. (*See, e.g.*, Dkt. No. 144-8 at 19-25 (Separate Statement, Facts 33-43).) Specifically, Shahid, Farhaad, Kamran, and Little have asserted their Fifth Amendment right against self-incrimination. ADSI and these defendants concede that while *Cisco* may appropriately draw an adverse inference against it at trial, the 3rdPDs may not escape liability based on that same silence.

     ADSI does not persuade. In general, "[p]arties are free to invoke the Fifth Amendment in civil cases, but the court is equally free to draw adverse inferences from their failure of proof." *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998). As the 3rdPDs point out, *Baxter v.*

1  *Palmigiano*, 425 U.S. 308, 318-19 (1976), endorses the "prevailing rule" that the Court may draw
2  an adverse inference when (1) the information withheld would have been unfavorable to a party
3  when the surrounding circumstances would normally compel an innocent person to respond to the
4  allegations brought against him, and (2) the proponent of the adverse inference offers additional
5  evidence against that party. *See also Colello*, 139 F.3d at 677-78. At least one court has gone
6  further, ruling that invocation of the Fifth Amendment may have sufficient probative value such
7  that excluding evidence of it may be an abuse of discretion. *See Harris v. Chicago,* 266 F.3d 750,
8  755 (7th Cir. 2001).

9  "On summary judgment, an adverse inference alone is not enough to support the absence
10 of a genuine dispute of material fact." *Sec. & Exch. Comm'n v. Strategic Glob. Investments, Inc.*,
11 262 F. Supp. 3d 1007, 1023 (S.D. Cal. 2017) (citing *Colello*, 139 F.3d at 678). "Such an inference
12 may be drawn only when there is independent evidence of the fact to which the party refuses to
13 answer." *Id.* "When there is no corroborating evidence to support the fact under inquiry, no
14 negative inference is permitted." *Id.* Moreover, the rights of the parties must be weighed, and no
15 adverse inference could be considered unless there is a substantial need for the information sought,
16 and no other less burdensome alternative exists. *Blue Cross & Blue Shield of Alabama v. Unity*
17 *Outpatient Surgery Ctr., Inc.*, No. SACV05230TJHVBKX, 2011 WL 13356160, at *1–2 (C.D.
18 Cal. Apr. 21, 2011) (citing *Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000)). In *Blue*
19 *Cross*, the court found that plaintiff was not entitled to an adverse inference at the summary
20 judgment stage after defendant invoked the Fifth Amendment because it had less burdensome
21 avenues to seek evidence that could have supported an adverse inference. *Id.* It was "futile for
22 [plaintiff] to point out that [defendant] did not present any evidence in response to [it]'s summary
23 judgment motion." *Blue Cross*, 2011 WL 13356160, at *2 (citing *Nissan Fire & Marine Ins. Co.,*
24 *Ltd. v. Fritz Cos., Inc.*, 210 F3d 1099, 1102-1103 (9th Cir. 2000)).

25 However, the notion that the assertion of the Fifth Amendment on an issue on which a
26 party bears the burden of proof could serve as a substitute for production of evidence was soundly
27 rejected by the Supreme Court *United States v. Rylander,* 460 U.S. 752, 758 (1983). "We think . .
28 . .[that] would convert the privilege from the shield against compulsory self-incrimination which it

was intended to be into a sword whereby a claimant asserting the privilege would be freed from adducing proof in support of a burden which would otherwise have been his." *Id. See also, Clancy v. Coyne,* 244 F. Supp. 2d 894, 899-900 (N.D. Ill. 2002) (when a party asserts the Fifth Amendment on an issue on which it bears the burden of proof, even without reaching the issue of negative inference, by asserting the Fifth, the party has failed to produce evidence necessary to carry its burden). In other words, as stated by another court, "a party who asserts the privilege against self-incrimination must bear the consequences of lack of evidence." *United States v. $148,840.00 in United States Currency,* 521 F.3d 1268, 1274 (10th Cir. 2008) (internal quotation marks omitted).

Here, it is apparent that ADSI and the affiliated defendants are attempting to use the Fifth Amendment privilege as both a sword and a shield in this litigation. On the one hand, the ADSI parties are asserting the Fifth Amendment rights in Cisco's case; this defensive posture constitutes the shield. On the other hand, the ADSI parties are then affirmatively, and offensively, preventing the 3rdPDs from obtaining information relevant to their defense against the indemnification claims; the sword. The impact is substantial, especially where ADSI ultimately bears the burden on its indemnification claim against the 3rdPDs.

Moreover, as pointed out by the 3rdPDs, evidence exists allowing the Court to draw an inference as to the invocation of the ADSI's Fifth Amendment rights (*e.g.* that the ADSI affiliated defendants knew and participated in the scheme). In summary: after the 3rdPDs left ADSI, the alleged counterfeiting scheme continued to operate for at least a year,[7] with evidence reflecting the direct involvement of the ADSI parties. In particular: addresses and post office boxes relevant to the scheme were affiliated with the ADSI parties; some defendants testified that they maintained tight control or oversight over key contracts and accounts that were allegedly involved in the counterfeiting scheme; and some defendants directed other non-parties in furtherance of the

---

[7] The ADSI parties aver in their opposition that activities that continued once the 3rdPDs left ADSI are irrelevant to the motion. The Court disagrees. As the 3rdPDs highlight, such post-September 2017 activities demonstrate the ADSI parties' knowledge, intent, and control of the counterfeiting scheme.

1  counterfeiting scheme.  Thus, in light of the above ample evidence in the record, the Court may

2  appropriately draw a *negative* inference as to the ADSI's parties' invocation of their Fifth

3  Amendment rights.

4  Accordingly, the Court **FINDS** that there is a negative inference in the ADSI parties'

5  invocation of their Fifth Amendment rights.  It is with this lens that the Court now turns to ADSI's

6  motion for summary judgment.

### C. Summary Judgment on the Indemnity Claim

Indemnity is a "shifting of responsibility from the shoulders of one person to another." *American Motorcycle Assn. v. Superior Ct.,* 20 Cal. 3d 578, 595 n. 4 (Cal. 1978).  The elements of a claim for indemnity are "(1) a showing of *fault* on the part of the indemnitor" in causing the underlying alleged injury; and "(2) resulting damages to the indemnitee for which the indemnitor is contractually or equitably responsible." *Great Western Drywall v. Interstate Fire & Casualty Co.* 161 Cal. App. 4th 1033, 1041 (Cal. Ct. App. 2008) (quoting *Expressions at Rancho Niguel Ass'n v. Ahmanson Developments, Inc.* 86 Cal. App. 4th 1135, 1139 (Cal. Ct. App. 2001). (emphasis in original).  The party seeking to be indemnified bears the burden of proof as to these elements. *American Motorcycle Assn, supra,* at 607.  Thus, assuming that ADSI is found liable to Cisco, it in turn bears the burden of proving its claims that the 3rdPDs were at fault for the underlying importation of counterfeit Cisco products.

Here, in light of the Court's analysis as to the negative inference drawn from the ADSI parties' invocation of their Fifth Amendment rights, the Court finds that scant evidence exists with respect to the elements of indemnification as to each specific 3rdPD.  The Court addresses the evidence as to each.

Uddin.[8]  The 3rdPDs concede that of the 3rdPDs, the Court may decide against granting

---

[8] The ADSI parties and defendant Imran Husain raise evidentiary objections to the declaration of third-party defendant Nabia Uddin submitted with the motion for summary judgment.  (*See* Dkt. No. 131-13 (unredacted Uddin Decl.); Dkt. No. 151-4 (objections).)  Because Uddin's declaration has no effect on the analysis of the motion, these objections are **DENIED AS MOOT**.

10

summary judgment in favor of Uddin because there is a genuine dispute of material fact. Indeed, Uddin has admitted under oath to knowingly trafficking in counterfeit goods. (Dkt. No. 135-8 at 33-36 (Parkhurst Decl., ¶ 3, Exh. B ("Uddin Depo."), 126:25-129:10).) Uddin's defense to this admission is that she was only following orders of Shahid. (*See id.*; Dkt. No. 131-13 (unredacted Uddin Decl., ¶¶ 20-21).) Given that Uddin was intimately involved with setting up a post office box to receive counterfeit goods and further admitted to the scheme, and that there exists ample evidence in the record of her involvement in the scheme, the Court is unable to grant summary judgment for Uddin, even with a negative inference drawn in favor of the 3rdPDs, due to genuine disputes of material fact. Thus, summary judgment is **DENIED** as to Uddin.

Nguyen. Notably, there is no evidence in the record that Nguyen, who was a receptionist at ASDI, was involved in the counterfeiting scheme. Indeed, Nguyen is not mentioned *once* in the entirety of the opposition filed by ADSI. ADSI maintained at the August 7, 2020 hearing that Nguyen was involved in this scheme, but failed to cite to any evidence in the record, and did not provide any argument beyond that she is liable because of "just her participation." (Dkt. No. 173 at 11.) This is insufficient to establish a genuine dispute of material fact. Thus, summary judgment is **GRANTED** as to Nguyen.

Banzon. The only purported evidence of Banzon's involvement in the scheme relates to an email (Dkt. No. 131-7 at 297-299 (Friend Decl. Ex. 35 [Rahi 0001280-81]) that Rahi Systems sent to Banzon one month prior to her departure in September 2017. This email includes an "Intro Slide Deck" and a line card,[9] which 3dPD asserts was sent for recruiting purposes. Generally, employees are entitled to seek other employment or make other preparations to compete with their employer. *Fowler v. Varian Associates, Inc.,* 196 Cal.App.3d 34, 41 (1987). The Court agrees that this email is insufficient evidence demonstrating Banzon's involvement with the counterfeiting scheme. Banzon, like Nguyen, is also not otherwise explicitly mentioned in the entirety of the opposition. Thus, summary judgment is **GRANTED** as to Banzon.

---

[9] The Court notes that the "Intro Slide Deck" and line card were not submitted into the record, and are not attached as any exhibits to the briefing on the motion for summary judgment.

Karamat. ADSI identifies: (1) a series of emails about litigation costs after ADSI was sued by a customer in a gray market sale regarding a restocking fee that was approved by ADSI (Undisputed Fact 48), and (2) customer invoices that list Karamat as the sales person. (Dkt. No. 131-7 at 223-237 (Friend Decl. Ex. 27 [ADSI01538-51]).) ADSI argues that the documents "show Karamat selling Cisco products. None of these documents shows that Karamat was required to get approval before selling Cisco products." (Disputed Fact 49.) However, as the 3rdPDs highlight, it is unclear how or why such information would be found in *customer invoices*. The otherwise cited materials do not demonstrate any genuine dispute of material fact as to the indemnity claim. Thus, in the absence of other evidence, and in light of the negative inference, summary judgment is **GRANTED** as to Karamat.

Rahi Systems. ADSI identifies the following additional evidence as to Rahi Systems: an email regarding relabeling of products at the manufacturer's request; an email showing that Minhas was working at Rahi Systems while still employed with ADSI; documents reflecting a referral arrangement between Rahi Systems and Minhas and PFT that contains a provision for attorneys' fees to be paid by Rahi Systems; and an email from Rahi Systems' chief executive officer forwarding to Uddin contact information for Cisco's counsel to report ADSI's counterfeiting. ADSI also asserts that Rahi Systems denied it the opportunity for discovery as to its sales to determine whether Rahi Systems engaged in counterfeiting. Rahi Systems responds that its sales are not at issue in this litigation.

In sum, none of these documents or any evidence in the record show that Rahi Systems was involved in any scheme of counterfeiting Cisco products. ADSI offers little more than conclusory or speculative assertions. Indeed, these documents, while potentially relevant to the underlying state court action, do not reflect any involvement in the alleged counterfeiting scheme. Thus, summary judgment is **GRANTED** as to Rahi Systems.

Minhas and PFT. ADSI relies on similar documents for Minhas and PFT as it does for Rahi Systems. Specifically, ADSI also contends that, despite the 3rdPDs' assertion that PFT was incorporated for tax purposes (*i.e.* Minhas was an independent contractor for ADSI), ADSI contends Minhas did that for referring business to Rahi Systems while he still worked at ADSI.

(*See* Disputed Fact 45.)  Again, while this information may have relevance to the state court action, ADSI fails to demonstrate how this referral scheme pertains to the counterfeiting charges at issue here.  There is otherwise no other evidence in the record to show a genuine dispute of material fact as to the counterfeiting scheme.  For similar reasons as to Rahi Systems, summary judgment is **GRANTED** as to Minhas and PFT.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the 3rdPDs' motion for summary judgment.  In light of the disposition of this Order, judgment shall issue for the following 3rdPDs:  Minhas, Karamat, Rahi Systems, PFT, Banzon, and Nguyen.  The indemnity claim as to Uddin will proceed beyond the summary judgment stage.

This Order terminates Docket Number 130, 131, 135, and 144.

**IT IS SO ORDERED**.

Dated: October 2, 2020

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**