1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CISCO SYSTEMS, INC., ET AL.,** | Case No.  4:18-cv-07602-YGR |
| Plaintiffs, | |
| vs. | **ORDER: (1) RE: ORDER TO SHOW CAUSE; AND (2) GRANTING IN PART MOTION FOR ATTORNEYS' FEES** |
| **SHAHID H. SHEIKH, ET AL.,** | |
| Defendants. | Re: Dkt. Nos. 309, 310 |
| **ADVANCED DIGITAL SOLUTIONS INTERNATIONAL, INC.,** | |
| Third- Party Plaintiff, | |
| vs. | |
| **NABIA UDDIN,** | |
| Third-Party Defendant. | |

Plaintiffs Cisco Systems, Inc. and Cisco Technology, Inc. (collectively "Cisco") brought this action against defendants Shahid H. Sheikh, Kamran Sheikh, Farhaad Sheikh,[1] Advanced Digital Solutions International, Inc. ("ADSI"), Purefuturetech, LLC, Jessica Little, K&F Associates, LLC, and Imran Husain[2] for claims based on trademark infringement, trademark counterfeiting, false designation of origin, violation of California's Unfair Competition Law

---

[1]  Because multiple defendants have the "Sheikh" surname, the Court utilizes the first names of these defendants when referring to each of these individual defendants.

[2] The Court defines "ADSI parties" or "ADSI affiliated defendants" to include ADSI, Shahid, Kamran, Farhaad, Prefuturetech, LLC, and K&F Associates, LLC.

United States District Court
Northern District of California

("UCL"), and unjust enrichment.  Cisco has now voluntarily dismissed its claims against defendants per the parties' settlement.  (*See* Dkt. Nos. 296, 329, 330.)  As for the remaining claim, ADSI, as a third-party plaintiff, brings a claim for indemnity against third-party defendants Rahi Systems, Inc., Masood Minhas, Nauman Karamat, Pure Future Technology, Inc. ("PFT"), Nabia Uddin, Karoline Banzon, and Kaelyn Nguyen.

Now before the Court are the following matters: (1) an Order to Show Cause ("OSC") as to why third-party defendant Nabia Uddin should not dismissed (Dkt. No. 310); and (2) a motion for attorneys' fees filed by the remaining prevailing third-party defendants, Rahi Systems, Minhas, Karamat, PFT, Banzon, and Nguyen (collectively "PTPD" or "PTPDs") seeking recovery of $445,039.  (Dkt. No. 309.)  The matters were fully briefed by the parties.  (*See* Dkt. Nos. 309, 324, 325 (motion for attorneys' fees briefing); 310, 316, 317 (OSC briefing).)

Having considered the parties' briefing, reviewed the docket, and for the reasons stated below, the Court **HEREBY ORDERS** as follows: (1) the indemnity claim as to third-party defendant Nabia Uddin is **DISMISSED**; and (2) the motion for attorneys' fees is **GRANTED IN PART**.

The Court first considers the OSC before addressing the motion for attorneys' fees.

I. **ORDER TO SHOW CAUSE**

By way of background, Cisco brought its complaint against the ADSI parties alleging a years-long scheme to import and sell counterfeit Cisco products, asserting claims against them under the Lanham Act and California's UCL, and pleading alternatively a claim for unjust enrichment.   ADSI thereafter filed a third-party action against Uddin and the PTPDs, asserting that Uddin and the PTPDs were responsible for the counterfeiting and should therefore indemnify the ADSI parties.

The Court previously ruled that Uddin and the PTDPs share no joint liability with ADSI for Cisco's claims arising out of the Lanham Act and dismissed ADSI's indemnity claims based on the Lanham Act.  (*See* Dkt. No 53.)  The Court also previously granted summary judgment as to the claims brought against the PTPDs in light of the stark lack of evidence in the record, as well as construing the invocation of the Fifth Amendment against the ADSI parties (*i.e.* adverse inference).  (Dkt. No. 246.)  The notable exception to the ruling was to Uddin, where genuine

1   disputes of material fact existed as to her involvement in the counterfeiting scheme.  (*Id.*)  Cisco

2   thereafter dismissed its claims against ADSI arising under the UCL, to which ADSI stipulated.

3   (Dkt. No. 296.)  Based on this stipulation, the Court orally issued at a pretrial conference an OSC

4   as to why the Uddin should not be dismissed given that there appeared to be no remaining viable

5   claim against her that could be asserted in light of the dismissal of certain claims and the

6   settlement reached between Cisco and the ADSI parties.  (*See* Dkt. Nos. 308, 310.)

7        ADSI asserts that despite this glaring defect, dismissal of Uddin is inappropriate on the

8   following four grounds: (1) it is improper for the Court to dismiss Uddin where no motion is

9   pending before the Court; (2) ADSI's equitable indemnity claim is triable to a jury, and the Court

10  should not deprive ADSI of its meritorious claims; (3) indemnity survives because Cisco's unjust

11  enrichment claim is a proper basis for an indemnity claim; and (4) California law recognizes a

12  claim for equitable indemnity between concurrent and intentional tortfeasors.

13       ADSI does not persuade.  First, in general, a "trial court may act on its own initiative to

14  note the inadequacy of a complaint and dismiss it for failure to state a claim[.]" *Sparling v.*

15  *Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (internal citation omitted).  Where it

16  is "obvious" that a plaintiff (or in this case a third-party plaintiff) "cannot possibly win relief," the

17  Court may even dismiss the case without giving the plaintiff notice or an opportunity to respond.

18  *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 711 (N.D. Cal. 2014) (internal citation

19  omitted); *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("Such a dismissal may

20  be made without notice where the claimant cannot possibly win relief.").  Furthermore, Federal

21  Rule of Civil Procedure 41(b) provides "[u]nless the dismissal order states otherwise, a dismissal

22  under this subdivision (b) and any dismissal not under this rule [except for dismissals under Rule

23  12(b)(1)-(2) or (7)] operates as an adjudication on the merits."  Here, the Court did permit the

24  ADSI parties an opportunity to respond to the OSC, to which they filed a brief.  It is otherwise

25  well within the Court's authority to order dismissal for failure to state a claim, and the ADSI

26  parties fail to cite authority holding to the contrary.

27       Second, the ADSI parties' next argument that its indemnity claim is triable to a jury is

28  necessarily premised on the indemnity claim being meritorious.  ADSI essentially assumes that it

3

has appropriately stated a claim on which relief can be granted.  By definition, there can simply be no deprivation of submitting a claim to a jury given that ADSI has failed to show that there is in fact a valid claim.  Thus, the Court rejects ADSI's circular argument.

Third, as referenced, the ADSI parties fail to show that there is a proper underlying claim sufficient to state a claim for indemnification.  As correctly stated by Uddin: an equitable indemnity claim is "wholly derivative" of the claims being made against the putative indemnitee. *W. S.S. Lines, Inc. v. San Pedro Peninsula Hosp.*, 8 Cal. 4th 100, 115 (1994) (indemnity liability capped by statutory limit on non-economic damages in medical malpractice cases). Indemnity is premised on joint liability. *Jocer Enters., Inc. v. Price*, 183 Cal. App. 4th 559, 573 (2010) ("[T]here can be no indemnity without liability, that is, the indemnitee and indemnitor must share liability for the injury" to another party) (internal citation omitted).  In other words, an alleged indemnitor must share not only some factual fault for underlying injury, but must also some legal fault, as well.  *See id.* at 573-574 (there can be no indemnity where the putative indemnitor "has no pertinent duty to the injured third party, . . . is immune from liability, or . . . has been found not to be responsible for the injury") (internal citations and quotation marks omitted).  Here, Cisco's underlying complaint pleads no theory of restitution under which ADSI can seek indemnity against Uddin because at this juncture the only viable basis for restitution is under the Lanham Act.  Even Cisco conceded in its pretrial brief that its claim for unjust enrichment rose and fell with its claim under the Lanham Act.  (Dkt. 298 at 2:24-3:5.)  Thus, ADSI fails to demonstrate that there is an independent claim for restitution upon which ADSI may seek indemnity from Uddin.

Finally, even assuming there was an independent unjust enrichment claim as pled by Cisco, ADSI fails to show that it can seek indemnity in such circumstances.  For unjust enrichment and restitution claims, "[t]he emphasis is on the wrongdoer's enrichment, not the victim's loss." *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1482 (2014).  This is because one of the "cornerstones of the law of restitution and unjust enrichment" is the principle that the object of restitution is to "eliminate [the] profit" received by the conscious wrongdoer or defaulting fiduciary.  *Id.* at 1486 (finding that defendant's disgorgement liability

United States District Court
Northern District of California

1   should be measured by the profits received by the defendant and not by the profit received those

2   the defendant was alleged to have aided and abetted) (internal citations omitted).   Here, any

3   disgorgement required of ADSI, would necessarily be limited to whatever enrichment ADSI

4   individually received in the form of profits from the sale of counterfeit Cisco products. In other

5   words, even assuming Uddin separately profited from the counterfeiting scheme, her alleged

6   individual profits would necessarily be excluded from the order of disgorgement against ADSI.

7   Thus, there would be nothing for Uddin to indemnify as disgorgement would be solely limited to

8   ADSI's wrongdoing—apart and separate from any alleged wrongdoing from Uddin.

9        In sum, in light of the present posture of this action, where Cisco and the ADSI parties

10  have reached a settlement and dismissal of claims, there is no longer a basis for the remaining

11  indemnity claim against Uddin.  Accordingly, the Court **DISMISSES** Uddin from this action.

12  **II.     MOTION FOR ATTORNEYS' FEES**

13       The PTPDs bring a motion for attorneys' fees against ADSI pursuant to California Code of

14  Civil Procedure section 1038, which allows defendants who have been granted summary judgment

15  in indemnity actions to recover all reasonable and necessary defense fees incurred by opposing the

16  proceeding. Cal. Civ. P. Code § 1038(a).   The parties do not dispute the standard that the Court

17  may award reasonable and necessary defense fees if the proceeding was not brought in good faith

18  and with reasonable cause. *Id.*   The Court begins by reviewing this legal standard.

19       First, "[g]ood faith, or its absence, involves a factual inquiry into the plaintiff's subjective

20  state of mind." *Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d

21  1111, 1128 (9th Cir. 2013) (internal citation omitted). "Black's Law Dictionary states that 'bad

22  faith' is the opposite of 'good faith' and that bad faith conduct is 'not prompted by an honest

23  mistake as to one's rights or duties, but by some interested or sinister motive.'" *Smith v. Selma*

24  *Cmty. Hosp.*, 188 Cal. App. 4th 1, 34, *as modified on denial of reh'g* (2010) (citing Black's Law

25  Dict., p. 127.)  Black's Law Dictionary also states "'bad faith' is not simply bad judgment or

26  negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or

27  moral obliquity; it is different from the negative idea of negligence in that it contemplates a state

28  of mind affirmatively operating with furtive design or ill will." *Id.* "The focus of the good faith

5

1   inquiry for defense costs is a party's honest belief in the viability of the claims[.]" *Nuveen*, 730

2   F.3d at 1128. However, as a party's "subjective state of mind will rarely be susceptible of direct

3   proof[,] usually the trial court will be required to infer it from circumstantial evidence." *Knight v.*

4   *City of Capitola*, 4 Cal. App. 4th 918, 932 (1992), *disapproved on other grounds, Reid v. Google,*

5   *Inc.*, 50 Cal. 4th 512 (2010).

6       Second, the "reasonable cause" element poses "whether any reasonable attorney would

7   have thought the claim tenable." *Kobzoff v. Los Angeles Cty. Harbor/UCLA Med. Ctr.*, 19 Cal.4th

8   851, 857 (1998) (citations omitted). "*Reasonable cause* is to be determined objectively, as a matter

9   of law, on the basis of the facts known to the plaintiff when he or she filed or maintained the

10  action." *Id.* (emphasis in original).  Courts addressing the reasonable cause element look to

11  whether "the plaintiff (and thus his or her attorney) can be shown to have been aware that an

12  element of the cause of action was missing."  *Knight*, 4 Cal. App. 4th at 933. Other courts have

13  asked whether "[a]t the minimum," the "plaintiffs' attorney ha[d] some articulable fact or facts to

14  conclude that a particular person or entity should be *initially* included in the lawsuit as a party-

15  defendant." *Kobzoff,* 19 Cal.4th at 859 (emphasis in original); *see also Carroll v. State of*

16  *California*, 217 Cal. App. 3d 134, 142 (1990) (same).  A plaintiff "cannot simply name every

17  conceivable defendant and rely on what future discovery may turn up." *Id.*, 19 Cal. 4th at 858

18  (citing *Knight*, 4 Cal. App. 4th at 933-34).

19      Further, both the "good faith" and "reasonable cause" requirements apply not only to the

20  initiation of the action, but also its "continued maintenance."  *Id.*, 19 Cal. 4th at 853, n.1 (citing

21  *Curtis v. County of Los Angeles*, 172 Cal. App. 3d 1243 (1985)).  "Of the two requirements to

22  avoid an order for defense costs, reasonable cause is obviously the more stringent." *Knight*, 4 Cal.

23  App. 4th at 932.  Thus:

24          To avoid paying defense costs under section 1038, plaintiff must
            show he or she filed and pursued the action with reasonable cause *and*
25          in the good faith belief that there was a justifiable controversy under
            the facts and law which warranted the filing of the complaint[.] The
26          moving defendant must negate either good faith or reasonable cause
            in order to prevail.
27

28  *Hall v. Regents of Univ. of Cal.,* 43 Cal. App. 4th 1580, 1585-86 (1996) (emphasis in original;

United States District Court
Northern District of California

1    internal citations and quotation marks omitted); *see also Nuveen*, 730 F.3d at 1127 ("Under

2    California law, applicable defendants may recover defendant costs[,] if the trial court finds the

3    plaintiffs lacked *either* reasonable cause or good faith in filing or maintaining the lawsuit." (citing

4    *Kobzoff*, 19 Cal. 4th at 853 (emphasis in original; internal quotation marks omitted)).

5         At the outset, the Court notes that it rarely, if ever, grants motions for attorneys' fees in

6    such circumstances given the high bar for which the requesting party must prevail.  That said,

7    having reviewed the totality of the record in this action as well as the parties' briefing, the Court

8    concludes that the PTPDs have rebutted ADSI's good faith and reasonable cause showings at the

9    motion for summary judgment stage and beyond.

10        The Court notes that whether ADSI had reasonable cause to file, or good faith for the

11   initial filing of this action against the PTPDs is a close question.  On the one hand, one of the

12   third-party defendants, Uddin, ultimately admitted her own role and involvement in the

13   counterfeiting scheme.  Moreover, there is some evidence showing that the PTPDs were intimately

14   involved in the sales of products at ADSI and had some degree of autonomy while employed at

15   ADSI.  Additionally, while not directly related to the counterfeiting charge, the PTPDs appeared

16   to be diverting business away from ADSI to a competitor, Rahi Systems, suggesting that the

17   PTDPs were potentially colluding for *some* illicit purposes.  On the other hand, as the Court

18   recognized in the order granting summary judgment, there was evidence some of the ADSI

19   affiliated parties knew of and participated in the counterfeiting scheme itself, especially where the

20   counterfeiting scheme continued beyond the termination and departure of the third-party

21   defendants from ADSI.  The latter might suggest that the ADSI affiliated parties would know who

22   was involved in the counterfeiting scheme.

23        Here, at least at the initial filing stage, the Court will not fault ADSI by finding a lack of

24   reasonable cause or good faith for broadly sweeping in potentially more individuals as third-party

25   defendants than were meritorious.  At the initial filing of the third-party complaint, ADSI may not

26   have known the extent and far reach of any counterfeiting scheme involving Cisco products and

27   sought to preserve any right of action against any potential wrongdoers.  This is especially so

28   where the PTPDs were potentially engaged in some activity that was harmful to ADSI.  Thus, the

United States District Court
Northern District of California

1   Court cannot conclude that the claims were untenable or filed in bad faith at the onset of the case.

2       All the foregoing said, however, the Court concludes that the calculus changes with respect

3   to both good faith and reasonable cause when this action reached the motion for summary

4   judgment stage, that is, after the close of discovery.  As the Court found at the summary judgment

5   stage, ADSI had a woeful lack of *any* evidence as to any of the PTPDs.  This utter lack of

6   evidence is especially galling as to two PTPDs: Nguyen and Banzon.  With respect to these two

7   individuals, ADSI failed to show even a scintilla of evidence, and even failed to *mention* either of

8   these two individuals in the opposition briefing.

9       The evidence and arguments as to the remaining PTPDs was either (i) irrelevant to the

10  counterfeiting scheme,[3] and/or (ii) failed to show that these PTPDs were involved in any

11  counterfeiting scheme involving Cisco products.[4]  Instead, ADSI relied entirely on speculation and

12  conjecture in arguing that the PTPDs were involved in the counterfeiting scheme.  At this stage

13  and given the state of the evidentiary record, including evidence that the counterfeiting scheme

14  continued beyond the departure of the third-party defendants, no reasonable attorney would

15  conclude that the claims brought by ADSI against the PTPDs were tenable or bought with

16  reasonable cause.  Moreover, given the state of the record, the Court can infer that the continued

17  pursuit of this action, despite the lack of any evidentiary support as to the claims, reflects a lack of

18  good faith.  This is specially so where ADSI's continued pursuit of these claims appears to be a

19  transparent attempt to strategically leverage the state court action and the claims therein against

20  the PTPDs in federal court.  This is the essence of bad faith.

21      ADSI's arguments that it should not be punished for the Court's later evidentiary ruling as

22  to the Fifth Amendment do not persuade.  ADSI's decision to invoke the Fifth Amendment as a

23  sword and shield was entirely within its control.  As the Court stated in its prior Order, ADSI

---

[3]  The Court recognizes that these adduced documents are potentially relevant to the ongoing state court case involving misappropriation of trade secrets and the diversion of business from ADSI to Rahi Systems.

[4]  Indeed, the proffered documents merely reflected appropriate transactions with clients (*e.g.* the gray market sale).

United States District Court
Northern District of California

1    could not rely on its invocation of the Fifth Amendment to show a genuine dispute of material

2    fact, especially where it bore the ultimate burden on the indemnity claims against the third-party

3    defendants.  (*See generally* Dkt. No. 246.)  Moreover, nothing in the record, even in the materials

4    stricken by the Court, are evidence of any of the PTPDs involvement in the counterfeiting scheme.

5    At best, these stricken materials show denials of personal involvement by the ADSI affiliated

6    parties—but are not otherwise evidence of any individual involvement of the PTPDs in the

7    counterfeiting scheme.

8            Because the Court has concluded that the PTPDs have failed to rebut ADSI's showing of

9    reasonable cause and good faith at the commencement of this action, but that the continued

10   maintenance of this action beyond the discovery stage lacked reasonable cause and good faith, the

11   Court will limit an award of attorneys' fees to the costs incurred after the close of discovery.

12   Thus, the Court **GRANTS IN PART** the motion for attorneys' fees.  Having reviewed *in camera* the

13   PTPDs' billing records for time spent on the motion for summary judgment, the Court finds the

14   total hours and billable costs claimed appropriate.  Thus, the Court finds that the PTPDs are

15   appropriately award only $73,510,29 of the $445,039 sought.[5]

16          ADSI's remaining disputed grounds, that the PTPDs failed to meet and confer as well as

17   failed to support their fee request, do not persuade.  The PTPDs' attached correspondence shows

18   an effort to meet and confer on the attorneys' fees request.  Moreover, given the Court's *in camera*

19   review of the billing records, the Court finds that the PTPDs have adequately supported their

20   attorneys' fees request and finds the amount awarded appropriate under the circumstances of this

21   action.

22          Accordingly, the Court **GRANTS IN PART** the motion for attorneys' fees. The PTPDs are

23   entitled to an award of $73,510.29 for attorneys' fees.

24

25          [5]  This amount includes a reduction to account for work attributed to Uddin, including both
26   a reduction of 1/7 of the cost for the motion for summary judgment briefing, as well as work
     performed for Uddin after the briefing.  Further, with respect to the informal request to review the
27   actual billings, the request is denied given (i) the potential for disclosure of attorney client
     communications, (ii) the overlay with the pending state court action, and (iii) the Court's limited
28   recovery.

United States District Court
Northern District of California

**III.    CONCLUSION**

For the foregoing reasons, the Court **HEREBY ORDERS** as follows:

- The remaining claims for indemnity against third-party defendant Nabia Uddin are **DISMISSED WITH PREJUDICE**;

- The motion for attorneys' fees is **GRANTED IN PART**; and

- The PTPDs are entitled to an award of $73,510,29 for attorneys' fees.

The remaining parties are **ORDERED** to submit a proposed form of judgment agreed as to form that is consistent with the Court's orders within five (5) business days from the day of this decision.

This Order terminates Docket Number 309.[6]

**IT IS SO ORDERED.**

Dated: July 23, 2021

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**

---

[6] To the extent that there are any remaining pending items on the docket, those actions are administratively terminated in light of the impeding closing of this action.